Hillsborough, }
March 1, 1938. }

OSCAR LAVALLÉE *v.* BOSTON AND MAINE RAILROAD.

*Paul J. Doyle* (by brief and orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Wiggin (Mr. Wiggin* orally), for the defendant.

BRANCH, J. The plaintiff's evidence tended to prove the following facts. On the morning of January 30, 1934, the plaintiff was riding as a passenger in the cab of a truck which was in collision with a gasoline driven train of the defendant, at Everett's Crossing, so-called, in the town of Weare. The highway over which the truck was traveling was extremely icy and slippery and was bordered on

both sides by a bank of snow piled up by the action of snow plows. From the direction in which the truck was approaching, the road descends to the crossing for a distance of approximately 119 feet, at a grade of 4.13%. The plaintiff's evidence tended to show that when the truck reached a point 125 feet from the crossing, the driver for the first time saw the approaching train, which was then opposite a large pine tree about 700 feet from the crossing. The truck at that time was traveling at a speed of 12 to 14 miles per hour. The driver immediately "jammed on the brakes," thus locking the wheels of the truck, and causing the rear wheels to skid to the right. He also attempted to steer the truck into a snow bank on the left of the highway but was unable to do so because he could not get the front wheels out of the ruts in the road. The speed of the truck was reduced, by the action of the brakes, to 4 or 5 miles per hour, but it continued to slide down the grade at this speed, with the rear wheels out of line with the front ones, until it reached the crossing, where it was struck by the train which was proceeding at a speed of about 25 or 30 miles per hour. The engineer testified that when he first saw the truck the train was at a point from 120 to 125 feet from the crossing, that the truck appeared to him to be about 'the same distance from the crossing and approaching at a speed of about 30 miles per hour.

The plaintiff's case comprises two claims of negligence: (1) that the statutory warning signals were not given, and (2) that the train was not stopped after the helpless condition of the truck was or should have been discovered.

In support of its motion for a directed verdict, the defendant argues that there was no evidence to justify a finding that the required signals were not given, and invokes the "scintilla" rule which was applied in such cases as *Paine* v. *Railway*, 58 N. H. 611; *Ingerson* v. *Railway*, 79 N. H. 154, and *Kingsbury* v. *Railroad*, 79 N. H. 203. This contention cannot be sustained. The driver of the truck and a third occupant thereof both testified that they were familiar with the crossing in question and that as they approached it they were listening for a whistle but heard none. The window of the cab on the truck was open about half an inch on the driver's side. Under these circumstances the *scintilla* rule has no application. The case is governed rather by the rule laid down in *Morrison* v. *Railroad*, 86 N. H. 176; *Stinson* v. *Railroad*, 81 N. H. 473 and *Phillips* v. *Railroad*, 81 N. H. 483. The testimony above referred to "makes inapplicable the argument advanced in some cases that when, under circumstances not calculated to attract attention to the subject, one not

giving attention fails to hear an alleged noise or to see an alleged object, his failure to hear or see has no probative value." *Stinson* v. *Railroad, supra,* 473, 474. It justified a finding in this case that the whistle was not blown as required by law.

We are unable to discover in the evidence, however, any basis for the finding that the failure of the engineer to give the crossing signals was the legal cause of the accident. Under ordinary conditions the driver of the truck would have had ample time and space in which to stop before reaching the track after he discovered the approach of the train. It is plain that the efficient cause of the collision was the icy condition of the road which prevented the operation of the brakes.

It may be argued, however, that if the statutory signals had been given, and had been heard by the driver, he would have stopped before reaching the crest of the grade. The answer is that the burden was upon the plaintiff to prove the causal connection between the negligence complained of and the collision, and the case is bare of evidence upon which to base a conclusion that the conduct of the truck driver would have been different if he had received earlier notice of the train's approach. He made no such claim in his testimony, and the probabilities are all against it.

Assuming that the speed of the train was 30 miles per hour, a simple mathematical calculation indicates that if the whistle had been blown at the whistling post 1320 feet from the crossing, this would have been 13 seconds before the driver in fact saw the train 700 feet from the crossing. It follows that the truck, proceeding at a speed of 12 to 14 miles per hour, would then have been from 216 to 250 feet from the crest of the grade. The evidence clearly indicates that at this distance the train would not have been visible. Whether the crossing would have been in sight is problematical. It could not reasonably be inferred that if the truck driver had then heard a whistle he would at once have stopped his truck in order to avoid a collision with a train, which was then invisible upon a crossing approximately 350 feet away. There is nothing in common experience to justify such a conclusion. On the contrary, it is generally known that truck drivers do not act that way.

If it be argued that the speed of the truck might have been reduced before reaching the crest of the grade, the answer is that there is no more basis in the evidence for this inference than for the one last considered. In regard to the speed of the truck, the driver testified upon direct examination as follows: "Q. When you reached this point (indicating on plan), when you applied your brakes, and saw

the train coming, and you applied your brakes, you were proceeding along the River Road here (indicating on plan), how fast do you say your truck was going, when you applied your brakes? A. Around twelve to fourteen miles. Q. Why was it going such a slow speed? A. Because of danger. Q. The danger was what? A. Ice." Having thus prepared for the danger incident to the icy condition of the road, which as he later testified "brought about the accident," there is no reason to infer that he would have made additional preparation for meeting the train by a further reduction in speed, at a distance of over 20 rods from the crossing, if he had then heard a whistle.

We therefore conclude that the present record contains no evidence upon which it could be found that the accident was caused by the defendant's failure to give the statutory crossing signals. A similar conclusion was reached by the Supreme Court of Iowa in a case having many points of similarity to that before us. *Barrett* v. *Railroad Administration*, 196 Ia. 1143.

With respect to the plaintiff's second claim of negligence, the crucial question is whether the engineer was chargeable with knowledge of the helpless condition of the truck at a time when he might have avoided the collision by stopping the train. Mere knowledge that the truck was approaching the crossing would impose no duty to stop the train. Such a duty would only arise after the engineer knew or should have known that the truck was not going to stop.

With reference to this branch of the case the plaintiff's whole argument rests upon a single fundamental proposition which is thus stated in his brief: "All of the maneuvers of the truck were visible to the engineer from the time the car was about opposite the 'pine tree' until the collision. There is no other conclusion for if the driver of the truck could see the car then the engineer was able to see the auto." From this premise the argument of the plaintiff proceeds as follows: "The view would have shown a truck approach the crossing on the highway, from the engineer's right about one hundred nineteen feet away from the crossing. This truck at once proceeded to slow down to four to five miles per hour and at this speed slide down the hill to the crossing. . . . But the most significant fact that would attract the attention of any observer was the manner in which it was sliding. This truck did not slide along the highway in a position parallel with its course but from the time the brakes were put on it slid in a 'sideways' manner or at an angle with the course of highway down to the crossing."

The evidence discloses two fallacies in the foregoing arguments.

(1) The evidence does not sustain the conclusion that "all of the maneuvers of the truck were visible to the engineer" from the time it came in sight until the collision occurred. The evidence would support a finding that the road at the crest of the grade was visible from a distance of 700 feet up the track, but the photographs introduced by the plaintiff demonstrate that only about half of the road from that point to the crossing could be seen. For the remainder of the distance it was hidden by a considerable embankment or mound of earth which occupied roughly the angle between the easterly side of the defendant's right of way and the northerly side of the highway This embankment was described in the testimony as being about four feet high and surmounted by a covering of snow on the day of the accident. The necessary effect of this obstruction was to hide at least the lower part of a vehicle, including the running gear, from the observation of persons upon an approaching train, and since the plaintiff attaches great importance to the action of the wheels of the truck and to the fact that the truck was sliding rather than rolling towards the tracks, the question of the engineer's opportunity to observe these factors of the situation was obviously of vital importance.

(2) With the foregoing limitation on the possible view of the engineer in mind, the evidence does not justify a conclusion that he knew or ought to have known from the observable movements of the truck that it was out of control at a time when the collision could have been avoided. If he saw the truck at the moment when the driver saw the train and observed it from that time forward, he would have seen a motor vehicle moving along the road at a speed of 12 to 14 miles per hour. He would have seen, if the distance permitted such observation, that this speed was promptly reduced to 4 or 5 miles per hour. Whether he could have seen, at a distance of several hundred feet, that the wheels were locked and that the truck was sliding, is wholly problematical and, in view of the conditions existing at the time, quite unlikely. Close observation of the details of the truck's movements at any distance approximating seven hundred feet would presuppose extraordinary eyesight in the engineer. Whether the angle of the truck in the road was sufficiently abnormal to attract attention, and, if so, whether it furnished an indication that the truck was out of control, were also questions to which the evidence furnishes no basis for affirmative answers. If the engineer had seen that the rear end of the truck skidded when the brakes were applied, there would have been nothing in this picture to indicate

that there was danger of a collision upon the crossing over 100 feet ahead of the truck, for, as the plaintiff observes in his brief, "such manner of progression is not infrequently seen upon our highways in winter driving when brakes are suddenly put on a car and the highway is rutty and icy." There is in the record no suggestion of a reason why the engineer should have assumed that the initial skid would continue for over a hundred feet, on the comparatively slight grade here involved, at the slow speed of 4 or 5 miles per hour. Even in retrospect it seems almost incredible that such a thing could have happened. The reduction of the truck's speed to such an extremely slow rate would normally indicate that it was under complete control and capable of being stopped at any moment before reaching the track.

Under the circumstances set forth above, a finding that due care on the part of the engineer would have informed him that the truck was out of control in time to have averted the accident, could be based only upon guess-work, which is not an acceptable basis for judicial decision.

Since neither of the plaintiff's allegations of causal negligence find support in the evidence, the order must be

*Judgment for the defendant.*

All concurred.