## Boyle *v.* Lehigh Valley Transit Company, Appellant.

Argued April 30, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Harold Butz,* of *Butz, Steckel & Rupp,* for appellant.

*Fred B. Gernerd,* with him *Abram Salsburg,* for appellee.

OPINION BY KENWORTHEY, J., July 23, 1942:

The tragic collision out of which this suit arose occurred in the afternoon of July 2, 1938, at or near a point where Old Bethlehem Pike crosses, at grade, the tracks of defendant's interurban trolley line. The action is by the guardian of two minor children of John B. Johnson, to recover damages for his death. The verdict was for plaintiff in the sum of $2,000. Defendant appeals from the refusal of its motion for judgment n. o. v.

Johnson was operating the automobile which collided with the trolley. All the occupants, who, in addition to Johnson, included his wife, two other minor children, and two other adults, were killed. The sole question is whether he was guilty of contributory negligence as a matter of law.

A number of facts are undisputed. It was shown by an engineer's plan that the Pike, at the point where it crosses the tracks, runs north and south; the tracks run northwest and southeast. Johnson was travelling north from Trainer's Corners toward Allentown; the trolley was travelling southeast from Allentown toward Philadelphia. The intersection of the highway with the tracks, therefore, formed an obtuse angle to Johnson's left as he approached the crossing; an acute angle to his right. On his left, at a distance of 480

feet along the tracks from the crossing, measured from the right-hand edge of the macadam, there was a tool shed. It was admitted that the operator of an automobile travelling north toward the crossing had a clear view of an approaching trolley from the moment it passed this tool shed. On the north or far side of the crossing, as Johnson approached it, there was conspiciously erected a "Stop, Look and Listen" sign which was visible 700 feet south of the crossing. The crossing was also equipped with a swinging· arm-signal and a bell which operated as a trolley approached.

The principal witness on whom plaintiff relied was Earl C. Brill, who, with his wife a passenger, was operating his car immediately to the rear and following Johnson. He had been following Johnson at a distance of about 50 feet from the time they left Trainer's Corners several miles to the south. He testified that, as they approached the crossing, both he and Johnson were travelling thirty-five miles per hour.[1] When he, Brill, reached a point about 150 feet from the crossing he heard the whistle or siren of the trolley; he looked to his left, saw the trolley approaching the crossing and about at the tool shed, and instinctively removed his foot from the accelerator, put on the brake and slowed down. Either at the time Brill heard the whistle or at the time he saw the trolley momentarily thereafter—it was not clear which—Johnson was 50 to 75 feet from the crossing. Naturally enough the witness had considerable difficulty in accurately estimating the distances of the rapidly moving objects he was attempting to describe. But in the broad view we take of the case, the exactness of these distances is not of paramount importance; of more importance, in view of the surrounding circumstances, is what happened thereafter.

---

[1] Other witnesses estimated Johnson's speed to be thirty to thirty-five miles per hour.

Johnson continued on without reducing his speed. When he reached a point *25 or 30 feet from the first rail,* he apparently saw the trolley bearing down upon him and, realizing a collision was inevitable, applied his brakes and swerved his car to the right,[2] the direction in which the trolley was going. The collision occurred 35 feet off the highway along defendant's right of way.

In view of the uncontradicted affirmative evidence[3] offered by defendant, it must be taken to be admitted that a long blast on the siren of the trolley was sounded when it was 700 feet from the crossing and again when it reached the tool shed, and that several short blasts were sounded as it approached (perhaps 200 feet) the crossing. And in addition, that the signal arm and bell were operating. *Miller v. Penna. R. R.,* 299 Pa. 63, 68, 149 A. 85.

According to plaintiff's witnesses, the trolley was travelling sixty miles an hour as it passed the tool shed and at no time reduced its speed.

According to the motorman, his average speed from the tool shed to a point 200 feet from the crossing was thirty to thirty-five miles per hour and that, when he reached the latter point, he released his brakes and put on power. Although he said the effect on his speed was "It increased a little," his only specific statement of the speed "immediately as [he was] entering on the highway" was that he was going "approximately thirty-

---

[2] Brill's testimony on the point was: "Q. And did he pull his car to its right before or after he applied the brakes, or did he do it simultaneously—if you know? A. It was more or less simultaneous. Q. That's the way it looked to you? A. That's the way it looked to me. Q. So he stepped on the brakes and turned to the right? A. That's right."

[3] The only testimony offered by the plaintiff was that of a driver of a car, three cars to the rear of Johnson, who stated she did not hear the signal of the trolley, but who was not shown to be consciously listening therefor.

five miles an hour." The remainder of defendant's testimony, which we disregard for the purposes of this appeal, indicated that there were cars parked both sides of the tracks standing to await the passage of the trolley and Johnson shot out from behind one of them and into the passing trolley.

Well aware as we are of the general rule which gives Johnson the benefit of a presumption that he was free from negligence (*Tull v. Baltimore & Ohio R. R.,* 292 Pa. 458, 141 A. 263), and that there was no absolute duty on him to stop, look and listen (*Smith v. Lehigh Valley Transit Co.,* 296 Pa. 212, 215, 145 A. 818), it is our opinion that even when we resolve, as it is our duty to do, all of the facts and inferences in his favor, the conclusion that he was guilty of contributory negligence is inevitable. When the picture of this accident is pieced together from the undisputed physical facts, the uncontradicted affirmative evidence offered by defendant by which plaintiff is bound, and plaintiff's own evidence, it is clearly the picture of a man, completely impervious to his own danger and that of others on the highways, driving headlong into an obvious collision. Johnson owed a duty to continue to look and listen as he approached the crossing (*Moore v. Erie Rys. Co.,* 308 Pa. 573, 576, 162 A. 812), and to have his car under such control that he could stop when he saw the impending danger (*Smith v. Lehigh Valley Transit Co.,* supra); he failed in his duty.

Considerable weight was given by the lower court to the testimony of the motorman that he increased his speed when he reached a point 200 feet from the crossing. This was undoubtedly evidence from which the jury might conclude that the motorman was negligent. But his negligence is conceded. The only help plaintiff could get from it, on the question of contributory negligence would be on the theory that when the trolley was 200 feet away Johnson, who was about to enter

the tracks, assumed the trolley would continue at its then speed of thirty to thirty-five miles per. hour, and was justified in attempting to cross. See *Shearer v. Pittsburgh Railways Co.*, 145 Pa. Superior Ct. 560, 21 A. (2d) 482. But the hypothesis on which this theory is based will not stand up under the undisputed facts. Johnson was *not* about to enter the crossing when the trolley was 200 feet away. The court overlooked the uncontradicted testimony of Brill that Johnson, himself going thirty to thirty-five miles an hour, swerved his car to avoid the obviously impending collision when he was *25 or 30 feet from the tracks.* And any man who approaches a railway crossing with a trolley in plain view (whether it is going sixty miles an hour or thirty miles an hour), at such a rate of speed that he is unable to stop within 25 to 30 feet, is guilty of contributory negligence as a matter of law. *Smith v. Lehigh Valley Transit Co.*, supra.

The judgment is reversed and entered for defendant.

DISSENTING OPINION BY RHODES, J.:

There is no question as to the negligence of defendant's motorman, and I am unable to agree with the conclusion reached by the majority that Johnson was guilty of contributory negligence as a matter of law. As said in *Schaeffer v. Reading Transit Co.*, 302 Pa. 220, at page 223, 153 A. 323, at page 324, in an opinion by Mr. Justice, later Chief Justice, KEPHART: "The jury might well have concluded there was ample time for [Johnson] to have cleared the track if reasonable care had been exercised by the motorman in approaching the crossing."

The test to determine contributory negligence as a matter of law has frequently been said to be: "That it is only in a case where contributory negligence on the part of plaintiff is so clearly revealed that fair and reasonable individuals could not disagree as to its existence, that it may be declared judicially": *Rea v. Pittsburgh Railways Co.*, 344 Pa. 421, at page 423, 25 A. 2d

730, at page 731. Measured by that test, the trial judge was not in error in submitting the question of Johnson's negligence to the jury. In the opinion of the court below dismissing defendant's motion for judgment n. o. v., the relevant.principles and their application to the facts have been properly stated:

"Plaintiffs' decedent's burden of care was not to stop, look and listen as it would have been at a railway crossing (*Talley v. Chester Traction Co.*, 227 Pa. 393) but simply to have his car under such control as to avoid collision with what a prudent man might anticipate meeting, to look and listen and to continue to do so and not to attempt to negotiate the crossing unless, in the judgment of an ordinarily prudent man it could be done in safety. *Schaeffer v. Reading Traction Co.*, supra; *Keck v. Pittsburgh Rwy. Co.*, 271 Pa. 479; *Dopler v. Pittsburgh Rwys. Co.*, supra [307 Pa. 113], at page 119. Defendant contends that either decedent could not have kept his car under control nor continued to look and listen or he must have tested the danger. If this contention were valid, no driver or his heirs could ever recover for a grade crossing accident and yet such recoveries are legion. If decedent at a point at which he could see or hear the trolley car reasoned that at his speed and the trolley's speed and distance he would clear the crossing so far ahead of the trolley car as would leave the margin in time and distance which an ordinarily prudent man would deem safe, he had the right to proceed. True, it was his duty to check his judgment, but if he, acting prudently, determined that at his speed he could cross with safety he was not required to reduce his speed and eventually he must have gotten to the point where to reduce his speed would only serve to increase the risk.

"If, at that point, an unpredictable event changed conditions increasing his danger, he cannot be held accountable for his inability to stop. The jury had the right to infer that that unpredictable event was the

increasing speed of the trolley after it had reached within 200 feet of the crossing. Coupled with the presumption of due care and the equal right of the automobilist to the use of the crossing, we consider this increase in speed of the trolley car to be decisive in plaintiffs' favor. No automobilist can be expected to anticipate that a trolley car approaching the crossing of a heavily traveled road will put on power and increase speed." (See 275a, 92a)

Johnson was placed in sudden peril by the motorman's negligence, a negligence which he was not required to anticipate (*Schaeffer v. Reading Transit Co.*, supra, p. 223), as he had a right to assume that the motorman would exercise reasonable care and hold his car under control in approaching the highway (*Knobeloch v. Pittsburgh, Harmony, Butler & New Castle Ry. Co.*, 266 Pa. 140, 144, 109 A. 619). Whether he acted as a prudent man, under the circumstances, was clearly for the jury and not for the court. The jury could conclude that the accident was not due to the speed of the Johnson automobile, but the sudden increase of speed of defendant's trolley. To adopt the reasoning of the majority of this court is virtually to preclude recovery by any plaintiff against a negligent trolley company for an accident at such a crossing.[1]

The judgment should be affirmed.

---

[1] See Eldredge, Modern Tort Problems, p. 237, chap. 9, "Should Contributory Negligence Be a Complete Defense?"