# LODDER v. WESTERN PAC. R. CO. et al.

No. 7809.   Decided July 22, 1953.   (259 P. 2d 589.)

75 C.J.S. Railroads, sec. 857. Negligence of gate tender at railroad crossing. 44 Am. Jur. Railroads, sec. 527; 160 A.L.R. 731.

*Van Cott, Bagley, Cornwall & McCarthy, Leonard J. Lewis, Robert John Jensen,* Salt Lake City, for appellants.

*D. Ray Owen, Jr.,* Salt Lake City, *LeRoy B. Thatcher,* Ogden, for respondent.

WADE, Justice.

Defendants Western Pacific Railroad Company and Richard White, locomotive hostler or engineer, appeal from a judgment awarding plaintiff Merlene Lodder damages for personal injuries sustained from a collision between the automobile in which she was riding and a three-unit Diesel locomotive. The accident occurred on December 19, 1949 after 9:00 p.m. while she was riding toward the west with her husband in his automobile on Second South Street in Salt Lake City where it intersects with Fourth West Street. A heavy snow had recently fallen and it was still snowing and very slippery.

This intersection is a part of the railroad depot and both Second South and Fourth West Streets are 93 feet wide from curb line to curb line. Four railroad tracks traverse the intersection from north to south, the east track is within 6 or 7 feet from the northeast curb line corner of the intersection and runs about 15 degrees east of south and is east of the curb line at the southeast corner. Within 400 feet to the north of the north curb line there are four switches on the east track. On the northeast corner of the intersection is a two-story building separated from the curb line only by a 20.5 foot sidewalk on the south and west sides but instead of coming to a right-angle corner the wall on the southwest runs diagonally in a southeasterly north-westerly direction for about six feet. From a point 90 feet north of the point of impact, which was about 30 feet south of the north curb line on the east track the view of the north half of Second South Street is cut off by the building at about 100 feet east of that point.

The accident happened when the locomotive backed down the east track from the north into the front end of the north side of the car after it came onto the track from the east at a point about 30 feet south from the north curb line. The impact turned the automobile toward the south and it was shoved parallel with and to the east of the loco-

motive to within about eight feet of the south curb line, the rear end of the locomotive came to rest about five feet farther south and within three feet of the south curb line. Plaintiff's neck was wrenched by the jar of the impact.

A crossing watchman was stationed at this intersection and at the east side thereof below the "Railroad Crossing" sign was another sign which read "Watchman is off duty." When the watchman was on duty this lower sign was covered indicating that there was a watchman on duty. The driver of the automobile testified that he noticed that the sign was covered at the time he approached the intersection. Both plaintiff and her husband testified positively that there was no watchman in or around the intersection as they approached. The watchman testified that he saw the locomotive as it rounded a bend coming from the north and stopped north of the fourth switch which is about 400 feet north of the north curb line, that he had the switches lined up for it to come south on the east track and he gave it the come-on signal which it answered with two blasts of the whistle that the whistle was not again sounded prior to the collision, that the locomotive moved forward again and then stopped before it reached the third switch which is about 300 feet north of the curb line and he saw a light move off from the locomotive and go over to the third switch, whereupon he went back into the shack and called the yard master on the telephone, that after the call, while briskly swinging his lantern with the red lights showing toward the east and west, he walked from the shack to the center of the street where he arrived just as the crash occurred. On cross-examination he admitted that he testified in his deposition that he was walking toward the street instead of toward the center of the street when the accident occurred.

Over defendants' objection the case was submitted to the jury on special interrogatories. The jury found for the defendants that the locomotive bell rang continuously as it approached the intersection and that the light on the south

end of the locomotive was burning. It found for the plaintiff that defendants negligently failed to keep a proper lookout for the approach of automobiles, that such a lookout would have disclosed the danger to this automobile in time to avert the collision by sounding the locomotive whistle or by stopping it before it reached the point of impact, that the locomotive was driven into the intersection during a snowstorm without sounding the whistle before entering the crossing, that the watchman on duty at the time of the collision neligently failed to be stationed in the intersection or negligently failed to warn plaintiff or her husband, the driver of the automobile, that the locomotive was approaching and that each of the foregoing failures proximately caused or contributed in causing plaintiff's injuries. The jury exonerated plaintiff and the driver of the automobile from any and all negligence.

Before the argument the parties were informed that if the jury's answers indicated liability and exonerated plaintiff and her driver from negligence the question of damages would be then submitted to the jury. Counsel stipulated a time limit for argument and it was understood that only the stipulated time would be allowed to argue both the main case and damages. Defendants used more than their stipulated time to argue the main argument and the court refused to allow them additional time to argue the question of damages. The jury assessed plaintiff's damages at $25,000, which the trial court reduced to $10,000.

Defendants contend:

1. That the evidence does not support a finding that defendants' negligence proximately caused the collision.

2. That the answers to the interrogatories do not support the judgment.

3. That the refusal to allow the defendants to argue the question of damages prevented a fair trial.

4. That the trial court abused its discretion in denying a new trial because the verdict was tainted with passion and prejudice.

The jury could reasonably find that the defendants were guilty of negligence which proximately caused the collision. All of the grounds of negligence found by the jury seem to be supported by the evidence but in order to support the judgment we need find only one ground of negligence that is reasonably inferable from the evidence. We therefore discuss only one of such grounds of negligence.

The jury found that the crossing watchman stationed at the intersection negligently failed to warn the driver of the approach of the locomotive, which failure proximately caused the collision. The jury could reasonably infer from the evidence that the crossing watchman although stationed to direct traffic approaching this intersection, at the time of this collision, was not in the intersection nor near enough thereto to effectively flag down traffic or warn approaching drivers that the locomotive was approaching and that had he been in such position and properly performed his duties the accident would have been avoided. The watchman's own testimony reasonably supports the conclusion that he made a telephone call after the locomotive started toward the crossing and that he did not get back to the intersection in time to give a reasonable warning to the driver of the automobile that the locomotive was approaching, and the testimony of plaintiff and her driver that there was no watchman around the intersection prior to the accident supports this conclusion. There is nothing in the evidence which indicates that had this watchman been stationed in the intersection flagging all traffic down after the locomotive started moving toward the intersection as was his duty, instead of going into the shack and making a telephone call at this crucial period, the automobile would not have stopped in time to avoid the collision. Defendants argue that the evidence

shows that the street was so slippery that the automobile could not have been stopped within any reasonable distance but the evidence does not support that argument. From the evidence the jury could reasonably conclude that the locomotive first came in the driver's view when the automobile was only about 100 feet from the point of impact while the automobile was moving about 15 miles per hour, that the driver immediately shifted into low gear and then used his brakes when he found that it was not stopping soon enough and that the automobile although equipped with chains, slid about 60 feet to the point of impact, but that at that point it was barely moving. The jury could reasonably infer from such facts that had a warning of the locomotive's approach been given a little sooner the automobile would have stopped in time to avoid the collision. Under the circumstances here presented it would seem highly improbable that a warning of the approaching locomotive from the red light of the watchman when the automobile was from 200 to 400 feet away would have gone unheeded by the driver or that he would have been unable to make the stop well within such distance. The stormy night, the slippery streets, the driver's restricted view of the approaching train, and the covered sign indicating that a watchman was on duty, all made it imperative that at this crucial time just before the locomotive reached the intersection a watchman should be out in the intersection flagging down traffic which would be endangered by such movement of the train, and his failure to do so presented a question of negligence and proximate cause for the jury.

Defendants argue that under the evidence, as a matter of law, the sole proximate cause of the collision was the automobile driver's negligence. They claim that he clearly violated the statute by driving at a speed greater than was

"reasonable and prudent under the conditions having regard to actual and potential hazards then existing",

and by his failure to

"drive at an appropriately reduced speed when approaching and crossing an intersection or railway grade crossing".[1]

They cite cases holding as a matter of law that a similar statute was violated and that such violation was the sole proximate cause of the accident and therefore no recovery could be allowed.[2] That there are cases where such a holding is proper is clear, but the statute does not fix any definite speed at which a driver may drive. It merely requires that the speed be reasonable and prudent and appropriate under the existing conditions and surrounding circumstances. The test which it provides is very similar to the common law test of negligence.[3] What rate of speed constitutes negligence or a violation of this statute under the conditions shown by the evidence is a matter about which there is room for reasonable disagreement; such being the case, a jury question is presented.[4] The statute does not require that a driver in approaching a railway grade crossing must always drive at a rate of speed at which he can stop instantly. He is only required to drive at a reasonable, prudent and appropriate speed under the conditions having regard to the actual and potential hazards. The fact that in looking back we can see that it would have been safer had the automobile been driven slower does not prove a violation of the statute, that can be determined only by taking into consideration all the facts and circumstances known or which should have been known to the driver as he approached the crossing. Under the circumstances here shown, a finding that the driver was free from negligence was not

---

[1]See Sec. 57-7-113, U.C.A.1943, subdividsions (a) and (c).

[2]See *Papageorge* v. *Boston & M. R. R. Co.*, 317 Mass. 235, 57 N.E.2d 576.

[3]*Lynch* v. *Pennsylvania Ry. Co.*, 48 Ohio App. 295, 194 N.E. 31; *Carlin* v. *Thompson*, 234 Iowa 469, 12 N.W. 2d 224; *Davis* v. *Pere Marquette Ry. Co.*, 241 Mich. 166, 216 N.W. 424; *Boyle* v. *Lehi Transit Co.*, 150 Pa.Super. 86, 27 A.2d 682.

[4]See *Horsley* v. *Robinson*, 112 Utah 227, 186 P.2d 592.

unreasonable; a jury question was therefore presented and we cannot overrule the jury's conclusion.

Defendant further argues that there is no evidence that plaintiff's driver would have commenced trying to stop the automobile sooner had he received earlier warning that the locomotive was approaching. They cite a number of cases all involving the failure to sound a whistle at a time when the train was not within the range of the driver's view, where the driver had slowed down in anticipation of the approaching train but found to his surprise that the road was more slippery than he anticipated.[5] None of these cases involve the failure of a watchman on the job to attempt to flag down approaching traffic to avoid a collision with an approaching train. The signal of a crossing watchman continuously waving a red light to signal the driver to stop is usually much more direct and effective in bringing home to the driver that there is a train approaching than a mere single whistle when even the track is not in sight. There is no suggestion in the evidence that had the watchman constantly signaled' the traffic to stop while the locomotive was approaching the driver would not have tried to stop sooner. He did try to stop as soon as he had reason to believe that a train was approaching. It is but natural for a driver to obey a watchman's continuous signal to stop on an occasion like this one, and there is nothing in the record which tends to show that he would have refused to obey such a signal had it been given earlier, or that he would have been unsuccessful in such case.

---

[5]See *Lavallee* v. *Boston & Maine R. R. Co.*, 89 N.H. 323, 197 A. 816; *Umlauft* v. *Chicago M. & St. P. R. R.*, 233 Wis. 391, 289 N.W. 623; *Hickey* v. *Missouri Pac. R. R. Corp.*, 8 Cir., 8 F.2d 128; *Stroud* v. *Chicago M. & St. P. Ry. Co.*, 75 Mont. 384, 243 P. 1089. Defendant also cites a line of Utah cases including *Haarstrich* v. *Oregon Short Line Railroad Co.*, 70 Utah 552, 262 P. 100, which are obviously not in point here.

Defendants contend that the findings of the jury do not sustain the judgment. They argue that the determinative issue in this case was whether the defendants failed to give reasonable warning of the approach of the loco- motive, that if they did give such warning the fail- ure to give the warning in the manner specified in the questions answered by the jury was immaterial. Al- though no such question was proposed by defendants, it would have been proper in the interest of clearly presenting that problem to the jury to submit such issue to the jury but the failure to do so was not prejudicial. The finding that the failure to give the warning in the manners specified in the questions proximately caused the collision is in effect a finding that no reasonable warning of the approach was given and the jury could not have failed to so understand that such was the effect of their answers. So we conclude that the failure to directly present that issue was harmless.

We also do not agree with defendants' contention that the amount of the verdict was so excessive as to require a hold- ing as a mater of law that the jury was actuated by passion and prejudice. We recently said that where

"the verdict is so execessive as to show that it must have been moti- vated by prejudice or ill will * * * it should be unconditionally set aside."[6]

But we find no case where this court has held that as a matter of law passion and prejudice were shown merely by the excessive amount of the verdict so we have not indicated how great an amount or percentage of reduction would be required to make such a showing but we have approved reductions as high as 70 per cent of punitive damages, or about 63 per cent of the total verdict.[7] Here there was no other evidence of passion and preju- dice. The trial judge evidently concluded that the verdict

---

[6]*Wheat* v. *Denver & R. G. W. R. R. Co.*, 122 Utah 418, 250 P. 2d 932.
[7]See *Falkenberg* v. *Neff*, 72 Utah 258, 269 P. 1008; also following chart prepared by defendants.

was not so tainted, In *Wheat* v. *Denver & R. G. W. R. R. Co.*, supra, we stressed that in case of doubt the deliberate action of the trial court should be followed. Here the reduction was justified but there was no other evidence of passion and prejudice.

It was not error to refuse to allow defendants additional time to argue the question of damages. The limitation on their time was the result of their own stipulation, and was not imposed upon them by the court. They used all of their time and more in the main argument, knowing that if the jury found against them on the questions of negligence, under their stipulation they would have no time left to argue the question of damages. Under these circumstances the court was not arbitrary in enforcing their stipulation against them although under the circumstances it might have been better to have granted them some additional time to argue this question. We affirm the judgment with costs to respondent.

WOLFE, C.J., and McDONOUGH and CROCKETT, J.J., concur.

HENRIOD, J., concurs in result.

| Name of Case | Amount of net Jury Verdict | Remission Approved by this Court | Approximate % of Net Verdict Constituting Remission |
|---|---|---|---|
| Duffy v. Union Pac. R. Co., Utah, 218 P.2d 1080 | $ 9,000.00 | $ 4,000.00 | 44.4% |
| Mecham v. F o l e y, . . Utah, . . 235 P.2d 497 | 1,000.00 | 500.00 | 50% |
| Pauly v. McCarthy, 109 Utah 431, 184 P.2d 23 | 50,000.00 | 15,500.00 | 30% |
| Geary v. Cain, 69 Utah 340, 255 P. 416 | 20,000.00 | 9,500.00 | 47% |
| Eleganti v. Standard Coal Co., 50 Utah 585, 168 P. 266 | 3,400.00 | 1,400.00 | 41% |

| | | | |
|---|---|---|---|
| *Stephens Ranch & Livestock Co.* v. Union Pac. R. Co., 48 Utah 528, 161 P. 459 | 3,250.00 | 1,367.50 | 40% |
| *Kennedy* v. *Oregon Short Line R. Co.*, 18 Utah 325, 54 P. 988 | 9,685.00 | 2,600.00 | 27% |
| *Bourne* v. *Moore*, 77 Utah 184, 292 P. 1102 | 17,850.00 | 8,350.00 | 47% |
| *Sheperd* v. *Payne*, 60 Utah 140, 206 P. 1098 | 10,000.00 | 2,500.00 | 25% |