Appeal from Salt Lake County, Third District

## ELEGANTI v. STANDARD COAL CO.

No. 2989.   Decided October 15, 1917.   (168 Pac. 266.)

1. TRIAL—INSTRUCTIONS—PROVINCE OF JURY—UNCONTROVERTED FACTS. Where in an action for the death of a mine employee it appeared without dispute that explosive gas was found in defendant's mine on one occasion about two months prior to the death, the court properly told the jury that defendant's mine was a mine known to generate explosive gases, instead of submitting that question to the jury.   (Page 587.)

2. MASTER AND SERVANT—DUTY OF INSPECTION—STATUTORY REGULATIONS.   Comp. Laws 1907, section 1518, subd. 3, as amended by Laws 1913, c. 78, requiring mines known to generate explosive gases to be examined every morning, applied to a mine in which explosive gases were discovered on one occasion, whether or not they existed in the mine in sufficient quantity to make it unsafe or dangerous in the opinion of experts.   (Page 589.)

3. TRIAL—REFUSAL OF REQUESTS COVERED BY CHARGE GIVEN.   A requested instruction which was sufficiently covered in the court's general charge was properly refused, especially where it stated some propositions too favorably to defendant and others too strongly against plaintiff.   (Page 591.)

4. NEW TRIAL—EXCESSIVE DAMAGES—REMITTITUR INSTEAD OF NEW TRIAL.   In an action for death, the amount of damages is largely within the judgment of the jury, and the mere fact that the verdict is excessive is not sufficient to show passion or prejudice so as to require a new trial instead of a remittitur of the excess.   (Page 592.)

5. APPEAL AND ERROR—NEW TRIAL—EXCESSIVE DAMAGES.   Whether a new trial should be granted for excessiveness of the damages is largely in the discretion of the district court, and the Supreme Court ordinarily possesses no power other than that of determining whether the trial court has abused its discretion.   (Page 592.)

Appeal from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by A. Eleganti, as administrator of the Estate of Giacomo Boetto, Deceased, against the Standard Coal Company.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*A. R. Barnes* and *E. V. Higgins* for appellant.

*Weber & Olson* for respondent.

FRICK, C. J.

The plaintiff, as administrator of the estate of Giacomo Boetto, deceased, brought this action to recover damages caused by the death of said Boetto, who was an employee of the defendant company, and whose death, it is alleged, was caused through the negligence .of the defendant while the deceased was employed in the coal mine of the defendant in November, 1914. The action was based on our statute (Comp. Laws 1907, section 1518, subd. 3, as amended by chapter 78, Laws Utah 1913, p. 122), which reads:

"In all mines known to generate explosive gases, the mine foreman, or fire bosses, shall make a careful examination every morning of all working places and traveling ways, and all other places which might endanger the safety of the workmen, within three hours prior to the time at which the workmen shall enter the mine. Such examination shall be made with the safety lamp."

In the complaint it is, in substance, alleged that defendant's mine was "known to generate explosive gases"; that defendant had failed and neglected to comply with the provisions of the statute in failing to make a proper or any examination or exploration of the mine for explosive gases. The facts in that regard are fully set forth. It is alleged that the deceased was injured by an explosion of gases in defendant's mine, and that such injuries caused his death, all of which were the result of the omissions and negligence as aforesaid. The defendant, in its answer, denied all acts of negligence; denied that the mine in question was known to generate explosive gases; denied that plaintiff's intestate died from the effects of the explosion of gases in its mine, and, as an affirmative defense, averred that the deceased, at the time he was injured, was at a place in the mine where he had no right to be, and that his injury and death were caused by reason of his own negligence. It is also set up as an additional defense that the deceased had assumed the risk of injury. The cause was submitted to a jury, which returned a verdict in favor of the plaintiff. After modifying the verdict, as hereinafter shown, judgment was entered on the verdict, and the defendant appeals.

The defendant insists that the district court erred: (1) In its charge to the jury; (2) in excluding certain evidence offered by the defendant; (3) in refusing certain requests to charge asked by the defendant; and (4) in not granting the defendant a new trial.

The two propositions first stated raise what seems to be the only important question in the case. With respect to whether the mine in question was one known to generate explosive gases the court charged the jury:

"The court instructs you that it appears from the undisputed evidence that the defendant's mine was a mine known to generate explosive gases."

In the same charge the court also instructed the jury that no examination for such gases was made as provided by the statute. Defendant's counsel excepted to that part of the charge we have quoted, and they now insist that the court erred in so charging the jury. They contend that the question whether defendant's mine was or was not a mine known to generate explosive gases should have been submitted to the jury as a fact to be found, and should not have been determined by the court as a matter of law. No doubt the question of whether defendant's mine was one which was known to generate explosive gases or not was a question of fact. But if there was no dispute respecting that fact, the court did not commit error by declaring the fact to be in accordance with the undisputed evidence. The following excerpt from the statement of facts in the brief of counsel for the defendant is, we think, alone sufficient to determine whether the district court erred in its charge respecting the character of the mine:

"From the very beginning of the development of this mine and up to the time of the accident which occurred on the 29th of November, 1914, no explosive gases had been found or were known to exist in this mine or in any of its workings, with the single exception that gas had been found about the 1st of October, 1914, nearly two months prior to the accident, in a crosscut just started, and which had not been completed, at the face of the second west entry * * * After the discovery of the gas, on the 1st of October, 1914, McMillan made a daily

inspection every morning of the mine and the workings of it, with a safety lamp, for a period of three or four weeks. * * * This witness, who stated he had been working in the mines since 1870, and who had practically 44 years of continuous experience in such mines, testified that he discontinued the examination with a safety lamp because he had reached the conclusion that there was not likely to be an accumulation of explosive gases in that mine; and he further stated that he did not consider that mine of such a character that he would expect to find an accumulation of explosive gases therein.''

All the witnesses agree that explosive gas was found in the mine about the time stated by counsel, and that at that time proper steps were taken to exclude the gas from the mine. The fact that explosive gas was found in the mine was therefore an undisputed question, and, that being so, no finding to the contrary could have been truthfully made by the jury. Where a finding with respect to any essential fact must necessarily be in the affirmative, it is ordinarily the duty of the court to declare the fact, and not permit the jury to assume that they may find the fact contrary to the undisputed evidence. The evidence is therefore clear and without dispute that explosive gases were discovered in defendant's mine at least on one occasion before the accident, and that such fact was known to defendant's agents who were in charge of the mine, and was therefore known by the defendant. The mine was therefore one which, under the statute, was known to be a mine which generated explosive gases, and hence was governed by the provisions enumerated in the section we have quoted. It was also admitted by all of the witnesses that no examination or inspection of the mine was made as required by the statute for at least several weeks before the accident in question occurred. Then, again, the evidence clearly authorized the findings of the jury that an explosion of gas occurred in the mine at the time of the accident; that the explosion caused the injury to the deceased and resulted in his death; that the deceased was not guilty of contributory negligence; that he did not assume the risk; and that at the time of the explosion he was where he had a right to be in the mine. The control-

ling facts are therefore either admitted or are established by sufficient evidence to justify the verdict.

Counsel for the defendant, however, contend that the question of whether defendant's mine generated explosive gases or not within the purview of our statute is not a question that can be determined except by those who possess the necessary knowledge and experience upon the subject of explosive gases in coal mines. In other words, they insist that the question is one that must be determined by expert evidence. Counsel's theory is perhaps best illustrated by certain questions propounded by them to a certain witness, who, it was shown, possessed the necessary knowledge to testify upon the question. The question propounded reads as follows:

"From your knowledge of coal mines where you had operated and in this mine, would you consider this mine as you knew it at that time in November, 1914—Would you say that this mine, as you knew it at that time in November, 1914, would you say that this was a gaseous or non-gaseous mine?"

A number of questions of similar import were propounded by counsel, not only to this but to other witnesses. The court excluded the proffered evidence, and counsel insist that the ruling constituted error.

Counsel's theory seems to be that unless the mine in question developed a certain quantity of explosive gases, that is, a quantity which would in the opinion of experts make a mine dangerous or unsafe, it would not constitute a mine known to generate explosive gases within the      2
purview of our statute. In our judgment that contention is clearly untenable. The language of the statute is positive and direct. There is no qualification such as counsel seem to assume. The language of the statute is, "In all mines known to generate explosive gases" the examination and inspection directed by the statute must be made. A moment's reflection will make clear that the statute was intended to and does apply to all mines where explosive gases are known to exist, regardless of the quantity thereof. The Legislature thus withdrew the question respecting the quantity of gases, or whether the quantity was safe or otherwise, from the judg-

ment of all classes, whether experts or nonexperts, and imposed the duty of examination and inspection in all mines where explosive gases in any quantity are known to exist. The question, therefore, is not, Are there explosive gases in the mine in sufficient quantity to make the mine unsafe or dangerous? But the only question to consider is, Has explosive gas been discovered in the mine? And if it has the mine is necessarily one which is known to generate explosive gases. If explosive gases are found in a mine, then it is known to exist, and there is then no alternative save to follow the requirements of the statute with respect to examination and inspection. The Legislature has thus adopted the safe course. That its judgment in that regard is sound is demonstrated by the facts in this case. Here the evidence is conclusive that explosive gases were discovered in the mine about 60 days prior to the accident. The gases thus discovered were dissipated in the usual way, and the examination and inspection of the mine was kept up as required by the statute for some weeks. Some time before the accident, however, the examination was discontinued for the reason, as the witness who made the daily examination said, that no more gases were discovered. The fact was, however, established by what had theretofore been discovered that the mine generated explosive gases. Had the examination continued, it is reasonably certain that the gases which caused the explosion complained of would have been discovered and the explosion prevented. The duty of a continuous examination and inspection is imposed by the statute for the express purpose of obviating the very condition which arose in this case. That such is the proper construction of our statute is the effect of two decisions emanating from the federal courts, namely, *Deserant* v. *Cerillos Coal Ry. Co.*, 178 U. S. 409-420, 20 Sup. Ct. 967, 44 L. Ed. 1127, and *Sommer* v. *Carbon Hill Coal Co.*, 89 Fed. 54, 32 C. C. A. 156. Counsel for defendant have, however, also cited two cases on which they rely, namely, *Timson* v. *Coal & Coke Co.*, 220 Mo. 580, 119 S. W. 565, and *D'Jorko* v. *Berwind-White Coal Co.*, 231 Pa. 164, 80 Atl. 77. In the first case last

above cited the court, in the course of the opinion, at page 588, of 220 Mo., at page 566, of 119 S. W. said:

"The petition does not aver that the mine in question was a mine in which gas was generated,"

and in connection with the foregoing the court further on in the opinion, said,

"Plaintiff offered no proof of the fact that the mine in question generated gas."

The case cited from Pennsylvania is to the same effect. In the Missouri case the trial court, without either allegation or proof, held as a matter of law that all coal mines generate gas, and the Supreme Court held the ruling erroneous. It requires no argument, therefore, to demonstrate that the foregoing cases have no application here. In the case at bar the fact that the mine in question generated gas was pleaded and admitted. The district court, therefore, committed no error, either in charging as it did, or in excluding the evidence complained of.

It is next contended that the district court erred in refusing a number of requests to charge which were offered by the defendant. The principal complaint in that connection relates to a certain request in which specific statements were contained with regard to plaintiff's right to recover as administrator for the benefit of two sisters of the deceased who live in Italy. It must suffice to say that that phase of the case was sufficiently covered in the court's general charge, and for that reason the court committed no error in refusing the request. The request, however, contains some propositions which were too favorably stated in favor of the defendant, while others were too strongly stated against the plaintiff. For that reason also the court committed no error in refusing the request.

In connection with the point just discussed it is also contended that the evidence is insufficient to justify a recovery except for nominal damages. In that contention we cannot concur. While the evidence respecting the two sisters' rights is not exceedingly strong, yet it is sufficient to sustain the finding and judgment.

Finally, it is contended that the court erred in denying defendant's motion for a new trial. The jury returned a verdict in favor of the plaintiff for the sum of $3,400. One of the grounds of the motion for a new trial was that the damages allowed were excessive. The district      4, 5 court required the plaintiff to remit all in excess of $2,000, or, in case he refused to do that, submit to a new trial. The plaintiff acquiesced in the ruling of the court, and remitted the excess over $2,000, and the judgment was entered accordingly. It is now contended by counsel for defendant that the court erred in not setting aside the entire verdict and in not granting a new trial. In cases like the one at bar the question of the quantum of damage is largely within the judgment of the jury. True, the district court may exercise a sound legal discretion in determining whether a new trial should or should not be granted upon the ground of excessive damages. Counsel, however, also contend that in view of the amount allowed by the jury the verdict is necessarily the result of passion and prejudice. The mere fact that the verdict of a jury may be excessive is not alone sufficient to show that it is the result of passion or prejudice. See *Stephens Ranch & Live Stock Co.* v. *Union P. R. Co.*, 48 Utah, 528, 161 Pac. 459, and cases there cited. Numerous cases are there referred to in which it was held that the trial courts committed no error in requiring the successful party to remit a portion of the amount found in his favor. In many of those cases the difference is larger than in the case at bar. The question of whether a new trial should have been granted upon the ground now under discussion was therefore largely in the discretion of the district court. As pointed out in *Jensen* v. *Denver & R. G. R. Co.*, 44 Utah, 100, 138 Pac. 1192, 1193, the power to grant new trials upon the ground of excessive verdicts can rarely be exercised by this court, and the only power we ordinarily possess is to determine whether the trial court has abused its discretion in refusing to grant a new trial upon that ground. Nothing appears in the record before us from which we can say that the trial court abused

its discretion in refusing the motion for a new trial and hence it follows that this assignment must likewise fail.

We remark that while counsel for the defendant offered numerous requests and have assigned errors because the district court refused to charge the jury as requested, a careful reading of the court's charge discloses that all the issues were carefully and sufficiently submitted to the jury, and that there is no error in the record.

For the reasons stated, the judgment is affirmed. Plaintiff to recover costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.