317 P.2d 952

WALKER BANK & TRUST COMPANY, a corporation, as Administrator of the Estate of Nettie Nielson Thorup, Deceased, Plaintiff and Respondent,

v.

Eugene R. THORUP, Defendant and Appellant,

Ida Viola Thorup Layton, Defendant.

No. 8691.

Supreme Court of Utah.

Nov. 19, 1957.

Elias Hansen, J. Grant Iverson, James M. Carlson, Salt Lake City, for appellant.

Athol Rawlins and H. R. Waldo, Jr., of Ray, Rawlins, Jones & Henderson, Salt Lake City, for respondent.

WADE, Justice.

The question in this case is whether the purported signatures of Nettie N. Thorup, deceased, on two deeds to real property were written by her or were forgeries.

The plaintiff, Walker Bank & Trust Company, respondent here, as Administrator of the Estate of Nettie N. Thorup, brought this action to quiet title to the two tracts of land described in the above mentioned deeds against Eugene R. Thorup and Ida Viola Thorup Layton, defendants, who are a son and daughter of the decedent. The two deeds were each dated July 26, 1950. Over the signature of an attorney on each deed was the statement that it was signed in his presence and that on the above date Nettie N. Thorup personally appeared before him and acknowledged to him that she executed such deed, and the attorney's notarial seal was attached to each deed.

At the beginning of the trial plaintiff's counsel made the claim that the purported signatures to each of the above mentioned deeds were forgeries and offered such deeds in evidence as proof of such claim. The defendants joined in the offer of the deeds to prove that such purported signatures were genuine. The plaintiff then called Louis H. Thorup, another son of deceased, who identified numerous signatures of the deceased and gave his opinion that the two signatures in question were forgeries. The plaintiff then called a handwriting expert who identified enlarged photographs of the questioned signatures and enlarged photographs of other admittedly genuine signatures of the deceased. After a detailed comparison of the admittedly genuine signatures with the signatures in question the handwriting expert gave the opinion that the questioned signatures were very crude forgeries.

The defendants called the attorney who claimed to have witnessed the signing of the questioned deeds and to have taken the decedent's acknowledgment that she exe-

cuted such deeds who testified in great detail of drawing the deeds at the request of the deceased, and that she signed each of said deeds in his presence and in the presence of Eugene R. Thorup and that he took her acknowledgment that she executed each of the questioned deeds. The defendant, Eugene R. Thorup, testified as to the signing of· the deeds substantially the same as the attorney. There was also testimony to the effect that deceased had often stated after the date of the deeds that deceased had given the respective tracts of land to the respective defendants.

The trial court found the facts in favor of the plaintiff and against the defendants. Only the defendant, Eugene R. ·Thorup, appeals.

■ We have carefully studied the evidence, including the questioned signatures, and compared them with the ones which are admittedly genuine, including some additional signatures supplied by appellant on motion for a new trial in connection with arguments of counsel. Without a detailed discussion of the reasons therefor, we conclude that although the court could have found either way, its finding that the deceased did not write the questioned signatures must be affirmed. And this is true regardless of whether this case is considered a suit in equity or an action at law.

There are two other contentions which we will consider briefly:·

■ First, appellant contends that he was taken by surprise by plaintiff's evidence of forgery and did not have a fair opportunity to meet it. He points out that plaintiff's complaint merely asked to quiet title to the tracts of land without alleging fraud or claiming that the deeds were forged. To support this argument appellant relies on Rule 9(b) of Utah Rules of Civil Procedure which require that in "all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."

While in a general way a forgery is fraudulent, this is not the kind of fraud which that rule requires should be pleaded with particularity. That rule merely requires what has long been the practice of requiring fraud and misrepresentations and mistakes to be pleaded in detail. On the question of surprise the defendant was informed at the beginning of the trial that plaintiff claimed these deeds were forged, but he did not then or at any time throughout the trial claim surprise or ask for delay on that account. If appellant did not expect plaintiff to try to prove forgery, we do not understand what he did expect. Certainly appellant knew that plaintiff was aware that appellant claimed these deeds had been executed. The Rules of Procedure provide ample means whereby appellant could have discovered·.what. plaintiff intended to prove before going into trial. Appellant has made little showing that ·he

could do better if a new trial were granted. In view of these circumstances, we believe this contention is without merit.

 Second, appellant contends that even though deceased did not personally sign these deeds, still the evidence requires a holding that she authorized or adopted the writing of her name on these deeds as her signature. In support of this contention he points to the testimony to the effect that deceased stated after these deeds had been made that she had given the respective tracts of land to the respective defendants. It is undisputable that the deceased could have authorized someone else to sign her name for her to these deeds, and she could have adopted as her signature the signatures on the deeds which had already been written there by another.[1] If the evidence showed that either of the above conditions were the facts in this case, these instruments would be binding upon the deceased. But the evidence is far from proving that such was the case here. In fact the appellant and the attorney who claims to have witnessed deceased sign these instruments testified directly contrary to such contentions. They testified not that she authorized one of them to sign these deeds for her, but that she actually signed them in their presence. Nor is there anything in their testimony which is consistent with the idea that after her name had been signed to these instruments she adopted the instrument or the signing of her name as her signature. So there is nothing in this testimony that would support a finding that the signature, although written by another, was authorized by her, or that she adopted it as her own. The only evidence to support such contention is evidence produced by defendants that she repeatedly said she had given these respective pieces of property to the respective defendants. This evidence is far too general to require us to find contrary to the trial court's finding and the testimony introduced by appellant, that she authorized or adopted these signatures as her own.

Judgment affirmed with costs to respondent.

McDONOUGH, C. J., and CROCKETT and WORTHEN, JJ., concur.

HENRIOD, Justice (concurring).

I concur in the result only because I can find no reversible error in the record. However, had the lower court exercised its discretion and granted a new trial, and the examples of handwriting on a number of endorsed dividend checks accompanying the motion for new trial as new and additional evidence, had been placed before an arbiter of the facts, I have my own doubt that there would have been a finding of forgery. Some of the proffered examples

1. See N. M. Long Co. v. Kenwood Co., 85 Utah 524, 39 P.2d 1088, and authorities therein cited.

were so similar to signatures on the deeds which were claimed to be forgeries as not only to create such a doubt, but as reasonably to prove that the questioned signatures were genuine. I say this in spite of the testimony of a handwriting expert, who could have been in error as has been the case with many such experts in more than one instance. I believe that irrespective of result, a new trial better would have served justice in this equity case. It may or may not have cleared the atmosphere of any claim of misconduct on the part of an erstwhile reputable member of the bar, which the finding of the lower court obviously creates in this case.