327 P.2d 826

**Harold W. BODON, by his guardian ad litem, Heinrich Bodon, Plaintiff and Appellant,**

**v.**

**Emil SUHRMANN, dba Suhrmann's South Temple Meat Company and Albert Noorda and Sam L. Guss dba Jordan Meat & Livestock Co., Defendants and Respondents.**

**No. 8715.**

Supreme Court of Utah.

July 7, 1958

44

Rawlings, Wallace, Roberts & Black, Cannon & Duffin, Salt Lake City, for appellant.

Grant Macfarlane, F. Robert Bayle, Robert Gordon, Wallace R. Lauchnor, Salt Lake City, for respondents.

CROCKETT, Justice.

This is a companion case to that of Schneider v. Suhrmann et al.[1] reported concurrently herewith which sustains a verdict and judgment against the defendant Suhrmann for negligence in connection with preparation and selling improperly processed mettwurst, a type of sausage. The facts and the issues as to liability are the same in this case and the determination in favor of the plaintiff is also controlling here. As to damages, a considerably different problem is presented in this case which we deem advisable to treat in this separate opinion.

Plaintiff Bodon, a young man of 20, is a brother of Mrs. Schneider and ate the tainted mettwurst in the latter's home from which, according to the jury's finding, he contracted trichinosis as a result of the negligence of defendant Suhrmann, the retailer who sold it.

Plaintiff suffered some illness and financial loss for which the jury awarded him the munificent sum of $100. Plaintiff urges that this award is so paltry in comparison to any fair appraisal of his damage that the amount should be increased, or a new trial granted. There is implicit within the authority of the court to grant a new trial on the statutory ground of "excessive or inadequate damages * * *"[2] the power to order a new trial conditionally: that is, to order that a new trial be granted unless the party adversely affected by the order agrees to a remittitur or an additur of the damages to an amount within proper limits as viewed by the court. A motion for a new trial based on such ground invokes the exercise of such prerogative of the trial court; and likewise of this court on appeal.

We know of no case in which this court has directed an increase of an award of damages, but we have held that the evidence required a finding of some damages.[3]

1. 7 Utah 2d 35, 327 P.2d 822.
2. Rule 59(a) (5), U.R.C.P., adopted Jan. 1, 1950 adding "inadequacy" of damage as ground. See concurring opinion herein of Worthen, J.
3. Hill v. Varner, 4 Utah 2d 166, 290 P.2d 448, Fuller v. Mountain Sculpture, 6 Utah 2d 385, 314 P.2d 842.

There appears to be no persuasive reason for any differentiation between doing so and ordering a reduction because the verdict is excessive.[4] We state this not unmindful of the grounds stated as reasons therefor in the authorities referred to in the dissenting opinion.

It has long been established that where the award is in excess of damages shown by the evidence it will not be permitted to stand. In such instances the courts exercise their inherent supervisory powers over jury verdicts, which derive from their duty to see that justice is done; and make corrective orders necessary for that purpose. This is done by the trial court,[5] or upon its failure to do so, by this court on appeal.[6]

We are not here concerned with any question as to whether the disparity in the verdict is so gross as to indicate that the whole verdict is so suffused with passion and prejudice that it should be entirely set aside. The contention here is that the verdict is outside the limits of what appears justifiable under the evidence to the extent that it should not be permitted to stand. In such instances the remedy is to order a modification of the verdict to bring it within the evidence; and the adverse party is given the choice of accepting it or taking a new trial. This alternative does not infringe upon the right of trial by jury, because the party favored by the order has had his trial by jury and is seeking relief from the inadequacy of the jury verdict, while the party adversely affected always can choose the new trial if he so desires.[7]

The practical value of such procedure and the reason it should apply either to decreasing or to increasing a verdict are illustrated as follows:

Example 1: P sues D for $200 for destruction of two horses; the evidence shows that of plaintiff's two horses, valued at $100 each, defendant destroyed only one.

---

4. See excellent exposition of this point of view in dissenting opinion of Justice Stone, concurred in by Hughes, C. J., and Brandeis and Cardozo, JJ., in Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150.

5. See discussion in Jensen v. Denver & R. G. R. Co., 44 Utah 100, 138 P. 1185; Pauly v. McCarthy, 109 Utah 431, 184 P. 2d 123; Eleganti v. Standard Coal Co., 50 Utah 585, 168 P. 266; Stephens Ranch & L. S. Co. v. Union Pac. R. Co., 48 Utah 528, 161 P. 459.

6. General damages reduced: Mecham v. Foley, 120 Utah 416, 235 P.2d 497;

Shepard v. Payne, 60 Utah 140, 206 P. 1098; punitive damages reduced: Wilson v. Oldroyd, 1 Utah 2d 362, 267 P.2d 759; Falkenberg v. Neff, 72 Utah 258, 269 P. 1008.

7. As to authority to grant new trials, see Rule 59(a) U.R.C.P., formerly Sec. 104–40–2, U.C.A.1943; to grant a new trial conditionally see Stamp v. Union Pac. R. Co., 5 Utah 2d 397, 303 P.2d 279, 283; Wheat v. Denver & R. G. W. R. Co., 122 Utah 418, 250 P.2d 932; McAfee v. Ogden Ry. & Depot Co., 62 Utah 115, 218 P. 98.

The jury, in disregard of the evidence and the instructions, nevertheless renders a verdict of $200. There is no foundation for the verdict in the evidence, and it should not be permitted to stand. Yet it would be futile to go through the formality of granting and having a new trial to arrive at the correct judgment of $100. In order to avoid such futility of procedure, courts have adopted the sensible expedient of ordering the judgment reduced to the amount justified by the evidence (in such case $100), which plaintiff is allowed to accept, or take a new trial.

Example 2: Same facts as example 1, except the evidence shows that the defendant destroyed both horses. The jury, in disregard of the evidence and the instructions, renders a verdict for only $100. For the same reason as stated in example 1 above, the court should order the verdict increased to the correct amount, $200, which the defendant should be allowed to accept, or take a new trial.

That the same rule as to setting aside or modifying a verdict for excessiveness of damages should also apply to inadequacy is indicated in the language of the recent case of Paul v. Kirkendall.[8] This court, through Chief Justice McDonough, said:

"If inadequacy or excessiveness of the verdict * * * shows a disregard * * * of the evidence or the instructions * * * as to satisfy the court that the verdict was rendered under such disregard or misapprehension of the evidence or influence of passion or prejudice, then the court may exercise its discretion in the interest of justice and grant a new trial",

citing Saltas v. Affleck,[9] wherein tacit approval was given to an order of the trial court directing that an award of $800 for the death of plaintiff's son be increased to $2,400, which the defendant was directed to accept or take a new trial.

We revert to the pivotal question: Under the rules above stated, is the award of $100 so small, in comparison to the damages which would necessarily be found from any reasonable appraisal of the evidence, that this court should grant the plaintiff some affirmative relief with respect to it?

If we adopted plaintiff's view of the evidence, particularly of his subjective symptoms, there is no doubt that very substantial damages would be justified. The difficulty with his position is that the jury took the view that his illness was of no great consequence, and under the rule of review, we are obliged to survey the evidence in the light most favorable to their finding.[10] Nevertheless, the facts which

8. 1 Utah 2d 1, 261 P.2d 670, 671.
9. 99 Utah 381, 105 P.2d 176.

10. Toomer's Estate v. Union Pac. R. Co., 121 Utah 37, 239 P.2d 163.

were indisputably established must be considered.

■ Mr. Bodon was a vigorous young man inclined to athletics. His resistance to the trichinosis was undoubtedly greater than the average person's would be, and consequently his suffering less. His doctor characterized his case as "moderate." He was not hospitalized but had to remain home and abed for about a week at the onset of the disease. He testified that when he returned to work, (at a bookbinding company) he had to request duties which required little physical exertion for a time. It was shown that within a few weeks he resumed his athletic activities, swimming and soccer, although he complained of some weakness in his arms and legs in doing so. The doctor testified that upon a checkup nine months after the illness he was almost symptom free; and further, that although it was then too early to be positive about any permanent ill effects, in such moderate cases usually none are left. In addition to the above basic facts which must be reckoned with, he lost $55 for the week's wages and $14 for his doctor bill, a total of $69 out-of-pocket damages. Of the $100 awarded him this leaves only $31 as general damages for the pain, distress and inconvenience of having the disease.

■ . We affirm the responsibility of this court to be indulgent toward the verdict of the jury, and not to disturb it so long as it is within the bounds of reason, in accordance with the principles set forth in the companion case of Schneider v. Suhrmann;[11] and also that it is primarily the prerogative and the duty of the trial court to pass upon the adequacy of the verdict and to order any necessary modification thereof. Nevertheless, when the verdict is outside the limits of any reasonable appraisal of damages as shown by the evidence, it should not be permitted to stand, and if the trial court fails to rectify it, we are obliged to make the correction on appeal.[12]

■■ Our survey of the evidence impels the conclusion that the $100 awarded is so small as to come within the above rule, and that it should either be increased or vacated entirely. It is ordered that upon remand to the district court, the judgment be increased to $500, and that the defendant have 10 days in which to agree to accept such modification, and if he fails to do so, a new trial is granted. Costs to plaintiff.

McDONOUGH, C. J., and WADE, J. concur.

11. Footnote 1, supra.
12. See Jensen v. Denver & R. G. R. Co., footnote 5, supra, at page 1192 of 138 P.

the court, through Justice Straup: "Our power to correct a plain abuse of discretion * * * cannot be doubted."

WORTHEN, Justice (concurring).

I am of the opinion that the order granting a new trial unless defendant agrees to the increased judgment is proper.

It is observed by Mr. Justice CROCKETT that "We know of no case in which this court has directed an increase of an award of damages, but * * * there appears to be no persuasive reason for any differentiation between doing so and ordering a reduction because the verdict is excessive." In his dissenting opinion Mr. Justice HENRIOD is in agreement with Mr. Justice CROCKETT as to no case having increased an award of damages but disagrees that there is no persuasive reason for differentiation between decreasing and increasing the amount of the verdict.

In this connection it should be observed that our statutes from the Revised Statutes of 1898 to and including Utah Code Annotated 1943 did not authorize granting a new trial for *inadequate* damages. Subdivision (5) of Section 104–40–2, U.C.A. 1943 relating to new trials provided "(5) Excessive damages, appearing to have been given under the influence of passion or prejudice."

Rule 59(a) of our Rules of Civil Procedure adopted January 1, 1950, changed ground number (5) to read as follows: "Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice."

It would seem that if this court has been right over the years in requiring a remittitur of part of an excessive verdict under the statute prior to the effective date of the Rules of Civil Procedure, it should likewise be privileged to order an increase in the amount of the verdict as an alternative for granting a new trial.

I am not impressed with the examples set out in the majority opinion. In both examples if the evidence shows without dispute the amount of plaintiff's damage the court should not submit that question to the jury, but only the question of liability. If that were done the right to a new trial or modification of the amount of damages would not be presented.

I am of the opinion that notwithstanding the long established practice of our courts in ordering new trials *conditionally,* the entire subject should be thoroughly reviewed to determine if our conclusion in this respect is warranted. It will be conceded that subdivision (5) of Rule 59(a) is not warrant for granting a new trial *conditionally.* It authorizes granting of a new trial, without conditions, for "Excessive *or inadequate* damages, appearing to have been given under the influence of passion or prejudice." (Emphasis ours.)

The majority opinion states the rule which has obtained in this jurisdiction as follows:

"There is implicit within the authority of the court to grant a new trial

* * * the power to order a new trial conditionally: that is, to order that a new trial be granted unless the party adversely affected by the order agrees to a remittitur or an additur of the damages to an amount within proper limits as viewed by the court."

It is submitted that in any case in which this court has made a conditional order for a new trial it was first necessary to determine that grounds existed for granting a new trial.

In the case of Duffy v. Union Pacific R. Co.,[1] the jury awarded damages in the amount of $9,000. This court made the following order:

"It is ordered that the judgment appealed from be reversed and a new trial granted, with costs to appellant, unless respondent shall, within 15 days from the date of filing of this opinion, file in this court a remittitur in the sum of $4,000 and accept a net verdict of $5,000 * * *."

A similar order was made in the case of Mecham v. Foley cited in the main opinion.

In this case the order grants a new trial unless the defendant agrees to the increase of the judgment from $100 to $500.

Is it not strange to give the privilege and option to the party other than the one who requested and who is entitled to a new trial to consent to a reduction or an increase and thereby avoid the new trial?

In the Duffy case, supra, this court holding, as it did, that the defendant was entitled to a new trial, should have given the defendant the option of paying the $5,000 or of being granted a new trial. Why in this case should not the court, after concluding that plaintiff is entitled to a new trial, give plaintiff and not the defendant the option of accepting the additur or of having a new trial.

The House of Lords has held that no remittitur can be effective to avoid a new trial where damages are excessive unless both parties consent to the same.[2] I am in accord with that view and believe that this court would take a more realistic view if we adopted the same. The logic in this position is clear. The right to a new trial lies with the aggrieved party who has been the object of a jury's impassioned or prejudiced verdict. Should that party's right be subject to the narrow view of the trial judge as to what should constitute a fair verdict without his consent and with only the consent of the party not entitled to a new trial.

Once it is concluded that a new trial is warranted because of excessive damages it becomes a bargain between the trial judge or this court and the party not entitled to

1. 118 Utah 82, 218 P.2d 1080, 1085.

2. Watt v. Watt (1905) A.C. (Eng.) 115, 6 B.R.C. 1, 2 Ann.Cas. 672.

any relief, in which bargain the aggrieved party has no voice.

HENRIOD, Justice (dissenting).

I dissent, but agree with the majority opinion's admission that "We know of no case in which this court has directed an increase of an award of damages." I cannot agree, however, with the next sentence which states: "But * * * there appears to be no persuasive reason for any differentiation between doing so (increasing an award) and ordering a reduction because the verdict is excessive." The authorities, including the U. S. Supreme Court, sharply differ with the main opinion's unsupported conclusion, and demonstrate that there *is* reason for such differentiation.

Before canvassing the authorities, I feel constrained to question the soundness of what I believe are several loose generalities presented to the reader in the main opinion. It is said that:

"The contention here is that the verdict is outside the limits of what appears justifiable under the evidence to the extent that it should not be permitted to stand. In such instances the remedy is to order a modification of the verdict to bring it within the evidence; and the adverse party is given the choice of accepting it or taking a new trial."

Such language is a disarming misstatement of the law of this state to date. Without citation of any authority, and admitting that this court has never sanctioned an increase in verdicts, in one fell swoop it applies the rule as to reduction of verdicts to the case of upping them.

The main opinion volunteers that in Saltas v. Affleck [1]

"tacit approval was given to an order of the trial court directing that an award of $800 for the death of plaintiff's son be increased to $2,400, which the defendant was directed to accept or take a new trial."

The court did not give tacit approval to such an increase (and the defendant stood on his rights to have a new trial refusing to pay any such additur) but simply reaffirmed the principle that where a verdict is inadequate, the court could *grant a new trial*. It is hardly fair to cite that case as a prologue to the establishment of a new and hitherto unsupported rule.

After inquiring as to whether the award was so small as to justify affirmative relief, the opinion then *assumes* that such relief should be an arbitrary increase of the judgment. Rule 59 does not sanction such conclusion. Nor does any decision of this court. Nor do the authorities generally. To date the only relief in such cases has been to grant a new trial.

1. 99 Utah 381, 105 P.2d 176.

This brings us to the authorities. Utah's own Justice Sutherland, speaking for the United States Supreme Court [2] had the following to say as to additurs:

"The controlling distinction between the power of the court and that of the jury is that the former has the power to determine the law and the latter to determine the facts * * * Where the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages. Both are questions of fact. Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict, * * *—in that sense that it has been found by the jury,— and that the remittitur has the effect of merely lopping off an excrescence. But, where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict.

When, therefore, the trial court here found that the damages awarded by the jury were so inadequate as to entitle plaintiff to a new trial, how can it be held, with any semblance of reason, that that court, with the consent of the defendant only, may, by assessing an additional amount of damages, bring the constitutional right of the plaintiff to a jury trial to an end in respect of a matter of fact which no jury has ever passed upon either explicitly or by implication? To so hold is obviously to compel the plaintiff to forego his constitutional right to the verdict of a jury and accept 'an assessment partly made by a jury * * and partly by a tribunal which has no power to assess.' "

In Lemon v. Campbell,[3] after espousing the reasoning above, the court revealed another cogent reason why it is error to permit an increase in the judgment over and above the verdict, when it said:

"There is another matter—a practical one—which is also involved. In an order refusing a new trial for an excessive verdict, provided a remittitur is filed of the verdict in excess of a fair and reasonable amount, as determined by the trial court, it is the plaintiff,

2. Dimick v. Schiedt, 1935, 293 U.S. 474, 55 S.Ct. 296, 301, 79 L.Ed. 603, 95 A.L.R. 1150. See also Lorf v. City of Detroit, 1906, 145 Mich. 265, 108 N.W. 661; Dorsey v. Barba, 1952, 38 Cal.2d 350, 240 P.2d 604.

3. 1939, 136 Pa.Super. 370, 7 A.2d 643, 646.

who was successful on the trial, and whose freedom from contributory negligence was established by the jury, who is given the option of deciding whether he will accept a reduction of the verdict of the jury or insist on a new trial. But where a new trial is refused, conditioned on the defendant agreeing to pay the plaintiff a sum in excess of the verdict of the jury, it is the *losing, negligent defendant* who has the option of deciding whether a new trial shall be granted or an increased amount be *substituted for the verdict of the jury.*"

Montana[4] agrees, stating:

"That a judgment may be reversed and a new trial ordered, where the damages awarded are clearly inadequate under the evidence, has been many times affirmed by this and other courts; but this court never has assumed to exercise the authority or power of 'scaling a verdict upward.' "

Other cases follow this rule.[5]

In my opinion, this decision, at least by implication, presents an inaccurate picture of the procedure followed in this case, and also a disarming justification for the rule it lays down for the first time. It asserts that "This alternative[6] does not infringe upon the right of trial by jury, because the party favored[7] by the order is seeking relief from the inadequacy of the jury verdict, while the party adversely affected always can choose the new trial if he so desires.

Such a statement reasonably suggests that the plaintiff *asked the lower court* for a new trial, *or in the alternative,* for an amount over and above the verdict. No motion for such relief can be found in the record. Only a motion for a new trial can be found there, on the grounds that "the damages awarded were inadequate, appearing to have been given under the influence of passion or prejudice." To give any other impression is to ignore the record.

Now, for the first time on appeal, so far as can be determined from this record, the plaintiff makes a brand new motion,—a motion for a new trial *or in the alternative for an amount over and above the verdict.* Such motion is quite foreign to a mere motion for a new trial.

In permitting such procedure and granting the relief asked for for the first time

4. Osterholm v. Butte Electric R. Co., 1921, 60 Mont. 193, 199 P. 252, 255.
5. DeKeyser v. Milwaukee Auto Ins. Co., 1941, 236 Wis. 419, 295 N.W. 755; Springer v. J. J. Newberry Co., D.C.1951, 94 F.Supp. 905.

6. Requiring that a new trial be granted *or* that something that was not determined by the jury be added to its verdict.
7. The plaintiff.

on appeal, this court assumes the role of a trial court, and indulges a procedure that is a stranger to both the trial court and the record. If such motion can be made for the first time on appeal, it follows that a motion for a new trial on any statutory[8] or other grounds should be entertained for the first time on appeal. Such entertainment, of course completely emasculates Rule 59 and the provisions therein relating to the giving of notice, etc., and such procedure reflects a novel and rather startling departure from standard appellate practice, quite out of harmony with the numerous pronouncements of this court refusing to review matters not entertained at the trial level.

By another kind of additur, a statement has been incorporated in the main opinion since this writer's dissent was inked, to which I feel constrained to address myself. It is said that

> "There is implicit within the authority of the court to grant a new trial on the statutory ground of 'excessive or inadequate damages * * *' the power to order a new trial conditionally: that is, to order that a new trial be granted unless the party adversely affected by the order agrees to a remittitur or an additur."

This is a departure from the idea that the plaintiff had asked, in the alternative, for a new trial or an additur. Up until the time the statement quoted above was made, there was no implicitness whatever in the authority of this court, sua sponte, to grant a new trial unless the defendant pay something more than the jury found to be due in the way of damages, and I do not believe this observation challengeable since the main opinion acknowledges that "we know of no case in which this court has directed an increase of an award of damages."

In my opinion, this decision gives the court a power it never had, and one that trespasses into constitutional territory involving denial of both a jury trial and due process. It lays down what I think is a dangerous rule, that, even where no one seeks the relief, we, who were not particeps at the trial, can grant a new trial unless defendant pays a sum we arbitrarily set, forcing the plaintiff, who has absolutely no choice in the matter, to take the added amount without any possibility of having a jury pass on the matter. In doing so, it is of course necessary that we admit that the inadequacy was a basis for a new trial under Rule 59. If such inadequacy calls for a new trial, I think it calls for a new trial *with a jury*. Requiring

---

8. Rule 59, Utah Rules of Civil Procedure.

plaintiff to take what may be an inadequate additur with no choice in the matter is as much a denial of a jury trial as to deny it to him in the first place.

If this court can add $400 to a $100 verdict, claiming the latter to be inadequate so as to justify a new trial, then it can add $1.00 to a $100 verdict, and the defendant, by paying $101 effectively could prevent plaintiff from having a jury trial. My guess is that this case proves the point, since it would appear reasonable to believe that a plaintiff who is suing for $5,000 would prefer to take his chances with a jury on a new trial than to take a sum that obviously would not pay for the cost of litigation and appeal.

The unfairness of the rule laid down by the court seems apparent when one realizes that in ordering a new trial unless the defendant pay something more that we choose arbitrarily to set, without giving plaintiff any choice in the matter, leaves the entire matter of whether plaintiff may have a new trial or not up to the misfeasant wrongdoer,—the defendant. Such rule, born in our own mansion, without any authority save our own interdiction, cannot be found in the very rules we ourselves promulgated, and does violence, in my opinion, to Rule 59. Carried to its logical conclusion it would seem to me that this rule would authorize a new trial or an additur even where a jury brings in a verdict of no cause of action.

There seems to be nothing apparent in the record of this case that would have caused the jury to become prejudiced against this plaintiff any more than against the other plaintiff, whose case was tried simultaneously with plaintiff's before the same judge and the same jury. Yet in this case we conclude that the jury's verdict was inadequate to the extent of being only 20% of what it should have been, justifying a new trial on the ground the jury was influenced by passion or prejudice. In the companion case, dealing with another personality who also claimed injury by eating tainted meat at the same table, we held that the same jury was not influenced by passion or prejudice in any percentage or at all. It is difficult for me to understand how this selfsame jury could be the exemplary agency which is the subject of such high complimentation in the opinion in the other suit, and at the same time be the impassioned, prejudiced and penurious agency which the main opinion here must mean by its adversion to the verdict as being "outside the limits of any reasonable appraisal of damages."

In arriving at its conclusion and to substantiate it, two examples of litigation over damage to horses are given, which I be-

lieve are not apropos of the question of remittitur or additur at all. If, as the opinion says, the evidence shows that the facts are as related in the examples, there would seem to be nothing to give to the jury, since there would be no facts to find, and the case would be decided on motion for directed verdict, or on summary judgment under Rule 59, at a pre-trial, as a matter of law.

Furthermore, I believe that even under the facts related in the main opinion, there is sufficient competent evidence to sustain the verdict. It is pointed out that the plaintiff suffered $69.00 out of pocket expense, and that "of the $100 awarded him this leaves only $31.00 as general damages for the pain, distress and inconvenience of having the disease."

The jury may not have believed some of the testimony about pain and suffering. If there was sufficient believable evidence to support the verdict, this case is departing from its numerous pronouncements heretofore made to the effect that if there be any substantial evidence to support the verdict we will not disturb it on appeal. I believe the court has fallen into the error of setting out facts testified to and then assuming that the jury had to believe them all. Under the facts of this case I do not think the court abused its discretion in denying a new trial. Its judgment should be affirmed.