JO ANN VIVEIROS, a minor, by her father
and next friend, JOSEPH H. VIVEIROS, and
JOSEPH H. VIVEIROS, Plaintiffs-Appellants,
*v.* STATE OF HAWAII, Defendant-Appellee

No. 5303

AUGUST 16, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal arises out of a civil action brought by plaintiffs-appellants against the State of Hawaii under HRS § 662 commonly known as the State Tort Liability Act. Trial by the court without a jury[1] was held in the first circuit on March 23, 1972. The trial judge found that the State of Hawaii was negligent in failing to provide supervision at a program sponsored by Kailua High School during regular school hours. The trial court further found that the injuries suffered by plaintiff, Jo

---

[1]HRS § 662-5 reads as follows:

§ 662-5 *Jury.* Any action against the State under this chapter shall be tried by the court without a jury.

Ann Viveiros, were a result of the State's negligent omission. The State has not appealed these findings. General damages of $15,000.00 and special damages of $180.84 were assessed. Pursuant to HRS § 663-31 (Supp. 1972), the trial judge determined that defendant was 75% negligent and that plaintiff, Jo Ann Viveiros, was 25% negligent for "failing to leave the scene prior to her being injured." On April 24, 1972 a judgment was filed in favor of plaintiffs for $11,250.00 general damages and $180.84 special damages together with costs of $180.39. In open court, the trial judge denied plaintiffs' attorney's fees, presumably on the authority of HRS § 662-12. The present appeal is from the trial judge's findings on general damages, comparative negligence and, tangentially, on the denial of attorney's fees.

The facts reveal that on December 3, 1970 at about 9:30 a.m., a school sponsored "light show" created by students began in a lecture hall at Kailua High School. At this time, an educational assistant acting as a supervisor was the only staff member present in the auditorium. Soon after the show started, this supervisor departed to observe a 15 to 20 minute coffee break. Though the show was to be supervised by three or four teachers, due to a mix-up, the hall was left in the hands of the students who were producing the light show.

At approximately 9:30 a.m. plaintiff Jo Ann Viveiros, age 15, along with two friends paid the 25¢ admission fee and entered the darkened hall to observe the performance. They could not find seating, so they stood in the aisle. Although the audience was quiet at the time plaintiff entered, a few minutes later a small group in a corner of the hall became "noisy". A student in charge of the production told the group to keep quiet or "the teachers would come in". Plaintiff was standing about thirty-five feet away from this group and did not feel any concern for her safety, although at this point she knew that no teachers were present.

Shortly after the announcement, plaintiff and two other students were struck by metal objects apparently thrown by the rowdy group. Plaintiff suffered permanent damage to her left eye. Glasses will not correct her vision, because of the severe injury to the macula area of the inner eye. She does have normal vision with both eyes open, although her damaged eye will not improve beyond 20-200. She has suffered severe impairment to her depth perception within three feet, though her peripheral vision appears normal.

We subscribe to the rule that a child is only required to use that degree of care appropriate to his age, experience and mental capacity. *Fraga* v. *Hoffschlaeger Co.* 26 Haw. 557, *aff'd,* 290 F.146 (1922); *Grace* v. *Kumalaa,* 47 Haw. 281, 386 P.2d 372 (1963). We must reverse the finding by the trial judge that plaintiff was 25% negligent if we find that she conformed to the above standard by remaining in the auditorium after she discovered that the event was unsupervised.

At the time the isolated group of students became boisterous, Jo Ann was standing approximately thirty-five feet in front of them. The record reveals that the group was merely vocal. There is no mention made in the record of threats being shouted or evidence that objects were being thrown during the concert. Apparently none of Jo Ann's peers felt endangered, because no one was shown to have left the program once the group became boisterous. Jo Ann did not fear for her safety possibly because she harbored the reasonable belief that she was in no imminent physical danger.

We agree with the reasoning in *Ridge* v. *Boulder Creek Union Junior-Senior High School District,* 60 Cal. App. 2d 453, 460, 140 P.2d 990, 993-94 (1943). In this case, a 17 year old student was found not guilty of contributory negligence for using a power saw without its guard causing injury to himself. The court reasoned that:

Knowledge that danger exists is not knowledge of the

amount of danger necessary to charge a person with negligence in assuming the risk caused by such danger. The doing of an act with appreciation of the *amount* of danger in addition to mere appreciation of the danger is necessary in order to say as a matter of law that a person is negligent.

Since *Jo Ann could not reasonably anticipate that she was in danger of physical harm nor appreciate the amount of danger, we must find that the trial judge erred in finding her 25% negligent. In our view, plaintiff conducted herself as a reasonable person would have under the same conditions.*

Plaintiff prays for a partial new trial on the issue of damages or in the alternative for this court to make its own award of damages.

In *Cozine* v. *Hawaiian Catamaran, Ltd.,* 49 Haw. 267, 414 P.2d 428 (1966), we said that:

The power to limit the new trial to the question of damages of course exists, but whether we should do so rests in our judicial discretion. (Citations omitted.)

*See also Young* v. *Price,* 49 Haw. 314, 424 P.2d 107 (1966).

We shall not disturb the findings of the trial court on the issue of damages nor remand for a partial new trial unless we find that the measure of damages was clearly erroneous under Rule 52 (a) H.R.C.P. This court's interpretation of Rule 52 (a) was made quite clear in *Low* v. *Honolulu Rapid Transit,* 50 Haw. 582, 445 P.2d 372 (1968), and has been reiterated in numerous cases since.[2] In *Low* we held that:

H.R.C.P., Rule 52 (a) states that " [f]indings of fact shall not be set aside unless clearly erroneous." A

[2]See Siko v. Seguirant, 51 Haw. 118, 452 P.2d 447 (1969); Ed Klein, Inc. v. Hotel Kaimana, Inc., 51 Haw. 268, 457 P.2d 210 (1969); First Hawaiian Bank v. Smith, 52 Haw. 591, 483 P.2d 185 (1971); Imperial Finance Corp. v. Finance Factors, Ltd., 53 Haw. 203, 490 P.2d 662 (1971).

finding is not "clearly erroneous" unless the reviewing court is driven irrefragably to the conclusion that all objective appraisals of the evidence would result in a different finding. *Id.* at 586, 445 P.2d at 376.

We have carefully studied the transcript of the proceedings below, and we note that the testimony of plaintiffs' and defendant's medical expert witnesses regarding the extent of plaintiff's injuries are often in conflict.[3] Given this state of the record the trial judge, as trier of the facts, appears to us to have based his award on substantial if conflicting evidence. We therefore hold that the trial court's finding as to the amount of Miss Viveiros' damages was not clearly erroneous. Although $15,000 may seem to be slight compensation for the loss of one eye, the record shows conflicting evidence as to the degree of that loss (see footnote 3). The trial judge has the advantage of this court in receiving evidence first hand and weighing it accordingly. We feel no compulsion to second guess the trier of fact in this situation.

Since we view HRS § 662-12 as a statute that gives the trial court discretion in awarding attorney's fees, we must necessarily sustain the denial of such allowance.

Affirmed in part, reversed in part, and remanded to the circuit court for entry of a final judgment in conformance with this opinion.

*R. Charles Bocken* (*Kenneth R. Kupchak* with him on the briefs, *Damon Shigekane Key & Char,* of counsel) , for plaintiffs-appellants.

---

[3] For example, defendant's medical expert testified that plaintiff's functional impairment would be more serious if the injury had affected her peripheral rather than her central vision. Asked the same question, plaintiffs' expert said he would rather lose peripheral vision; that this loss would lead to less functional impairment. Defendant's expert also testified· that plaintiff would be able to live a normal life visually with "few exceptions". Plaintiffs' doctor tended to maximize Jo Ann's functional difficulties. Both witnesses were also at odds over the effect of deviation or eyeball drift and on the question of the degree of loss of depth perception. They did agree that Jo Ann suffered a serious injury to her left eye.

*Shirley Smith,* Deputy Attorney General, (*George Pai,* Attorney General, with her on the brief), for defendant-appellee.

---

CONCURRING AND DISSENTING OPINION OF LEVINSON, J.,
WITH WHOM KOBAYASHI, J., JOINS

I concur with the majority's disposition of the negligence and attorney's fee issues; but I dissent from its decision with regard to damages, which is, in my opinion, erroneous.

The majority's use of *Low* v. *Honolulu Rapid Transit Co.,* 50 Haw. 582, 445 P.2d 392 (1968), to delineate the standard for appellate disturbance of a trial court's findings of fact is correct. An application of this standard to the facts of the case before us, however, leads me to conclude that the trial court's determination as to the amount of damages was so grossly inadequate as to require this court to increase the award by means of an additur.

The majority apparently regards superficial conflict between medical experts as a convenient excuse for giving short shrift to the appellant's injuries and, as a result, the seriousness of those injuries is inaccurately minimized.

The appellant possessed 20/20, or perfect, vision in both eyes prior to the accident. As a consequence of the accident, her straight ahead, or central, vision in the left eye was adversely affected, so that she now has a blank spot in her left eye when she looks straight ahead because of a hole in the retina. There is substantial permanent damage. Her own doctor testified that her vision is now 20/200, and the State's expert measured it as 20/400. Her left eyeball drifts, a condition which may worsen. Finally, the appellant has lost depth perception at close range.

Nothing can be done medically, by means of surgery

or the use of eyeglasses, to correct the damage. Furthermore, she now carries a weighty risk factor in the sense that she no longer has a spare eye; if anything happens to her right eye, the appellant will be considered legally blind.

The effects of the injury are considerable, aside from the swelling, bleeding and pain which accompanied the injury itself. The appellant's activities have been severely restricted. She is limited in physical activities because she is unable to catch objects. Nor can she watch movies and television, read, sew, or type for any length of time. She even finds it difficult to put on makeup. Not surprisingly, the appellant has been forced to abandon previous career plans as a stewardess and in business.

Since I suggest additur as the preferred solution to the inadequate damage award below, it is necessary to address the threshold question of whether appellate courts even possess such power. The answer is, of course, in the affirmative.

Because the Seventh Amendment of the United States Constitution[1] prohibits re-examination of facts tried by a jury except as permitted at common law, a distinction must be drawn at the outset between additur practices in the federal courts and those of state courts. In *Dimick* v *Schiedt*, 293 U.S. 474 (1935), the Supreme Court condemned the use of additur by the trial judge in federal courts on the theory that, unlike remittitur, it was not an established common law practice. The dissent,[2] however, seems to me to be the better reasoned opinion, stating that the Court's source is the power to act upon a motion

---

[1]The Seventh Amendment of the United States Constitution provides:
In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

[2]It is noteworthy that the dissenters in *Dimick* were Chief Justice Hughes and Justices Stone, Brandeis, and Cardozo, while the majority was composed of Justices Sutherland, McReynolds, Van Devanter, Butler, and Roberts.

to set aside a jury verdict as inadequate or excessive and the discretionary grant or denial of a new trial.[3]

State courts, on the other hand, are not bound by the same constitutional constraints, since the Seventh Amendment is not binding upon them. *Harada* v. *Burns,* 50 Haw. 528, 445 P.2d 376 (1968). Nor does the Hawaii Constitution contain any similar provision. Article 1, sec. 10[4] merely preserves the right to jury trial in civil controversies exceeding one hundred dollars in value.

The additur problem most often arises in the context of a trial court decision regarding the propriety of a jury's damage verdict. A leading case on point is *O'Connor* v. *Papertsian,* 309 N.Y. 465, 131 N.E.2d 883 (1956), wherein the New York Court of Appeals held that an intermediate appellate court had the power to modify by means of additur a trial court's order of a new trial on the grounds of an inadequate verdict. The court simply reasoned that the trial court's additur power is undisputed, and since the appellate courts are enabled

---

[3]Said Mr. Justice Stone at 495-96:

If our only guide is to be this scant record of the practice of controlling the jury's verdict, however fragmentary the state of its development at this period, and if we must deny any possibility of change, development or improvement, then it must be admitted that search of the legal scrap heap of a century and a half ago may commit us to the incongruous position in which we are left by the present decision: a federal trial court may deny a motion for a new trial where the plaintiff consents to decrease the judgment to a proper amount, but it is powerless to deny the motion if its judgment is influenced by the defendant's consent to a comparable increase in the recovery.

But I cannot agree that we are circumscribed by so narrow and rigid a conception of the common law. . . . When the Constitution was adopted, the common law was something more than a miscellaneous collection of precedents. It was a system, then a growth of some five centuries, to guide judicial decision. One of its principles, certainly as important as any other, and that which assured the possibility of the continuing vitality and usefulness of the system, was its capacity for growth and development, and its adaptability to every new situation to which it might be needful to apply it.

[4]Article I, sec. 10 of the Hawaii Constitution provides:

In suits at common law where the value in controversy shall exceed one hundred dollars, the right of trial by jury shall be preserved. The legislature may provide for a verdict by not less than three-fourths of the members of the jury.

to render the judgment which the trial court could or should have rendered, the intermediate appellate court acted properly. In *Bodon* v. *Suhrmann*, 8 Utah 2d 42, 327 P.2d 826 (1958), the Supreme Court of Utah increased the amount of a judgment five times, granting a new trial, explicitly stating:

> We are not here concerned with any question as to whether the disparity in the verdict is so gross as to indicate that the whole verdict is so suffused with passion and prejudice that it should be entirely set aside. The contention here is that the verdict is outside the limits of what appears justifiable under the evidence to the extent that it should not be permitted to stand. In such instances the remedy is to order a modification of the verdict to bring it within the evidence; and the adverse party is given the choice of accepting it or taking a new trial. This alternative does not infringe upon the right of trial by jury, because the party favored by the order has had his trial by jury and is seeking relief from the inadequacy of the jury verdict, while the party adversely affected always can choose the new trial if he so desires. (footnotes omitted) [8 Utah 2d at 45, 327 P.2d at 828-29]

*Accord, Bachmann* v. *Passalacqua*, 46 N.J. Super. 471, 135 A.2d 18 (1957).

While this question has not heretofore arisen in Hawaii, this court held in *Striker* v. *Nakamura*, 50 Haw. 590, 446 P.2d 35 (1968), that a trial judge not only may grant a new trial following an inadequate jury verdict, but in some circumstances he must do so.

The present case lends itself especially well to additur because the complicating issue of the defendant's right to a jury trial is absent. Under HRS § 662-5, tort actions brought against the State must be decided by judges rather than juries.

Professor Moore's view, which I would adopt, is as follows:

> If the issue of damages was determined by the court and its findings of fact are clearly erroneous, so that they may be set aside by the appellate court under Rule 52(a), we believe that it has the power, where the record is adequate, to order judgment for an increased amount. (footnotes omitted) [6A Moore's Federal Practice (2d ed. 1972) § 59.05[4], p. 3755]

The damage award below bears appellate scrutiny because its amount is so grossly inadequate in these days of high prices and continuing inflation for something as precious as sight.

There is, of course, no fixed standard in these matters beyond the requirement that the appellant be compensated reasonably for her injuries.

In view of the seriousness of the appellant's injuries, I would increase her award to a minimum of $75,000 with the agreement of the defendant or, in the alternative, remand to the circuit court for a new trial on the damage issue only. Additionally, I would require a new judge on remand since, if this had been a jury trial, the appellant would have the benefit of a new jury.