337 P.2d 937

Arthur O. NAUJOKS and Gertraude Naujoks, his wife, Plaintiffs and Respondents,

v.

Emil SUHRMANN, d/b/a Suhrmann's South Temple Meat Company, Defendant,

and

Albert Noorda and Sam L. Guss, d/b/a Jordan Meat & Livestock Company and Valley Sausage Company, a Utah corp., Defendants and Appellants.

No. 8775.

Supreme Court of Utah.

April 15, 1959.

Hurd, Bayle & Hurd, Wallace R. Lauchnor, Robert Gordon, Salt Lake City, for appellants.

Cannon & Duffin, Rawlings, Wallace, Roberts & Black, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

This is another of a series of cases arising from contracting trichinosis by eating mettwurst sausage furnished by the defendants.[1]  Plaintiffs obtained a judgment against Suhrmann, the retailer, and against Noorda and Guss, who operate Jordan Meat and Livestock Company, and Valley Sausage Company, the suppliers of the product.  The latter only have appealed. Their basic contention is that there is insufficient evidence to support certain of the jury's findings.

The background facts in the present case are generally similar to those in Schneider v. Suhrmann,[2] to which we refer the reader and add here only such additional matters as are essential to the separate treatment of this case.

In the Schneider case just referred to the plaintiff failed in his attempt to impose liability upon the defendant supplier; whereas in this case the plaintiffs are successful.  The significant difference is in the facts as found by the jury.  In the prior case it found that Albert Hoffman, an employee of the supplier, was not its agent in its dealings with Emil Suhrmann, the retailer.  In this case the jury found that he was

As pointed out in the other case referred to, we are not concerned with the inter-relationship of Noorda and Guss in operating their companies, but regard them simply as the suppliers of the mettwurst. Albert Hoffman was a sausage maker for

1.  See Schneider v. Suhrmann, 8 Utah 2d 35, 327 P.2d 822; Bodon v. Suhrmann, 8 Utah 2d 42, 327 P.2d 826; Niemann v. Grand Central Market, Inc., 9 Utah 2d —, 337 P.2d 424.
2.  8 Utah 2d 35, 327 P.2d 822.

them. Up until the summer of 1955 he assisted in preparing cooked mettwurst, a form of pork sausage, which was then sold to Emil Suhrmann who retailed it at his delicatessen in Salt Lake City. By "cooked" it is meant that the mettwurst has been heated to at least 137 degrees fahrenheit, the minimum temperature necessary to kill trichinae, a tiny organism sometimes found in pork, and which causes the disease, trichinosis.[3] It appears that excessive cooking spoils the flavor desired in mettwurst and that Suhrmann was anxious that it not be heated too much. In May of 1955 the suppliers informed him that it was impractical for them to cool down their ovens for that one product and that they could no longer supply the processed mettwurst to him. Thereupon Suhrmann offered to process or "smoke" the unfinished mettwurst at his own establishment. In accordance with this offer the suppliers processed the mettwurst as completely as they could without the use of ovens and then delivered it to Suhrmann. Thereafter Suhrmann, receiving some collaboration and advice from Hoffman, further processed the mettwurst but failed to cook it to the extent necessary to kill trichina. Some infested meat was sold to the plaintiffs herein and others, who thereby contracted trichinosis.

Both in this and in the previous case the suppliers have contended that they cannot be held liable to the consumer either on a negligence or an implied warranty theory unless the evidence showed that they, through Noorda or Guss personally, or their agent acting within the scope of his authority, knew or should have known that Suhrmann was selling the mettwurst to the public without processing it to kill trichina.

It is conceded that the suppliers knew of the dangers of trichina in uncooked pork of which mettwurst is made. In this case the jury answered special interrogatories finding that they knew, or reasonably should have known, that Suhrmann intended to sell the mettwurst without processing it to kill the trichina. The question of importance here is posed by defendant's challenge that the evidence will not support such a finding.

As to Noorda and Guss themselves we agree that the record is virtually devoid of evidence which would justify a finding that they knew of the critical fact above mentioned. If liability is to be imposed upon them it must be upon the basis of the knowledge and activities of their sausage maker, Albert Hoffman, the evidence concerning which we refer to below.

It is appreciated that the fact that one may be an agent for one purpose does not make him an agent for every purpose, but the agency is limited to acts within the

---

3. For a brief discussion of the life cycle of the trichina, and of the disease, trichinosis, which it causes, see Schneider v. Suhrmann, footnote 1, supra.

scope of authorized duties. Consistent therewith the court set forth the proper limitations by instructing the jury that, before it could find Hoffman to be the agent of the suppliers, it must believe that in processing the mettwurst he was under their control and that they either expressly or by conduct indicated that he was to advise and assist Suhrmann. In testing the validity of the finding that Hoffman was the supplier's agent, we look at the evidence and every reasonable inference therefrom in the light most favorable to it.[4]

As to the issue of Hoffman's agency: the defendants claim that he was employed only as a sausage maker and had no authority beyond that to act in their behalf; that his dealings with Suhrmann were because they both spoke German, and Suhrmann spoke almost no English, and that permitting him to act as interpreter on their behalf in no way enlarged the scope of his authority. This may be conceded to be a reasonable view of the evidence, but the jury was not obliged to accept it in view of other aspects of the evidence from which it could reasonably have found that Hoffman's authority went beyond that claimed by defendant: that when Suhrmann commenced dealing with suppliers he contacted Hoffman; that Hoffman took most of the orders from Suhrmann for the suppliers' products, including the mettwurst; that when some of the mettwurst shrank in the processing, Suhrmann contacted Hoffman and the latter gave him a credit with the suppliers; Hoffman's name appeared as a salesman on the suppliers' invoices of goods to Suhrmann; Hoffman delivered some of the mettwurst to Suhrmann's delicatessen; that he aided Suhrmann in smoking the product and, finally, that Hoffman repeatedly warned Suhrmann and his wife not to get the temperature in the oven over 80 degress fahrenheit or it would ruin the flavor and quality of the mettwurst. Upon the basis of the above evidence the jury could reasonably believe that the defendants took advantage of the language affinity between the two to let Hoffman handle the Suhrmann account generally. The finding of agency meets the traditional rule which requires only that there be some substantial evidence to sustain it.

The defendants having selected their employee and agent, are chargeable with responsibility for his activities and knowledge within the scope of assigned duties and those reasonably and necessarily incident thereto. Inasmuch as Hoffman's knowledge that the mettwurst was not being processed to kill trichinae before being sold to the public is imputable to the suppliers, this coupled with their admitted knowledge of trichina in uncooked pork and its dangers, provide a substantial

4. Toomer's Estate v. Union Pacific R. Co., 121 Utah 37, 239 P.2d 163.

basis in evidence for finding them negligent and imposing liability upon them.

Judgment affirmed. Costs to plaintiffs (respondents).

WADE and McDONOUGH, JJ., concur.

WORTHEN, J., heard argument but died before opinion filed.

HENRIOD, Justice (dissenting).

Because I think this case is no different factually than Schneider v. Suhrmann, recently decided by us,[1] I dissent. The main opinion concedes that the background facts are substantially the same, but says "only such additional matters as are essential to the separate treatment of this case" will be considered, the "significant difference" being a finding of agency here where none was found in the former.

Examination of plaintiff's briefs in the former case makes it appear that all the facts recited in the main opinion were adduced in the Schneider case, except, perhaps, that Hoffman gave Suhrmann some credit for meat returned and appeared as a salesman on the suppliers' invoices, both of which circumstances seem most immaterial and inconsequential.

In both cases, except for minor differences in paraphrasing identical interrogatories were given the jury. The one material here is as follows: "5(b). Would a reasonable prudent person in their (the suppliers) position have known that Suhrmann would sell the sausage without processing it?"

In the Schneider case the jury answered "Yes." Nonetheless the trial court refused to enter judgment against the suppliers on the ground that the evidence would not justify the verdict. We affirmed the trial court on that ground.

On practically identical evidence we now affirm, instead of reject, the same answer to the same interrogatory.

The question of agency, in my opinion makes no difference, if we are to be consistent, since we said the facts in the Schneider case imposed no liability on the suppliers and that the jury was wrong in saying the suppliers should have known that Suhrmann would sell adulterated meat, and therefore were liable. Now we say the jury is not wrong in saying the suppliers should have known the same thing. If we say the jury was wrong in finding agency there, how can we say it is right as to finding agency in this case on the same material facts?

In submitting that the facts relating to Hoffman's dealings with Suhrmann in the one case cannot be distinguished materially from those in the other case, I refer to the briefs of the respective parties and the records in the two cases.

1. 1958, 8 Utah 2d 35, 327 P.2d 822.

We made quite a to do in our former opinion of the fact that when Suhrmann started to process the meat himself, he testified as follows:

"Let me have it, prepare it as far as you are able and then deliver it to me, and I will finish it. *I have an oven to smoke it, and I will take care of the rest.* What you don't—*what you cannot do I will complete* in my own business." (Emphasis added.)

Such admission would seem to relieve the suppliers from liability and would seem to make our decision here quite out of harmony with our previous decision.