Debra Lynn MARTINEAU, Plaintiff and Appellant,

v.

Elliot J. ANDERSON and Mary Christine Anderson, Defendants and Respondents.

No. 16923.

Supreme Court of Utah.

Sept. 1, 1981.

---

3. *Id.*

Max D. Wheeler, Bruce H. Jensen, Craig S. Cook, Salt Lake City, for plaintiff and appellant.

Philip R. Fishler, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiff appeals the judgment entered in a personal injury action arising from an automobile accident and seeks a new trial on the issue of damages.

On May 15, 1972, plaintiff (then age 16) was a passenger in a car driven by her mother. The car was proceeding in the far left lane, headed east on Interstate 80 in Salt Lake County when it was struck on the right side by a car driven by defendant Mary Christine Anderson. The Martineau vehicle bounced between the Anderson vehicle and a bridge abutment before stopping.

After the accident, plaintiff suffered discomfort, particularly headaches. That evening, she was taken to the home of Dr. Reed Fogg, an orthopedic physician, who examined her and prescribed muscle relaxants and pain pills.

The next day, plaintiff was unable to attend school because of her physical condition. That night, however, she performed in a ballet review, after having been assured by her doctor that the performance would not aggravate her injuries.

Several days later, plaintiff was examined by Dr. Fogg in his office, at which time plaintiff was diagnosed as suffering from a loss of the normal lordotic curve of the cervical spine and associated muscle spasms. Further x-rays taken of the lower back in April, 1973, showed that plaintiff suffered from a congenital condition known as spondylolisthesis. Testimony at trial was that this is normally caused by a slipping separation of the back portion of the lower

vertebra. Sometime between the accident in 1972 and the time when plaintiff had her deposition taken (December, 1976), plaintiff also sustained a shoulder injury in a motorcycle accident.

After the accident of 1972, plaintiff continued to participate in various physical activities, including gymnastics in high school and competitive diving in college. Plaintiff claims that throughout all of this, her back pain was a continual source of frustration and an obstacle to her accomplishments. Ultimately, she stopped attending college (the reasons for which are in dispute), married, and had a child.

Plaintiff filed her complaint on May 13, 1976. After numerous delays, the case was tried to a jury in January, 1980. Evidence was presented from which the jury could have attributed all or none of plaintiff's pain to the accident. Following presentation of the evidence, plaintiff moved for a directed verdict as to liability. Said motion was denied and the case was submitted to the jury on general verdicts. The verdict favoring the plaintiff required the jury to assess both general and special damages.

The jury returned with a verdict in favor of plaintiff. The trial court examined the verdict and, apparently noting a discrepancy in the form of the verdict, called counsel to the bench for a side bar conference. This conference is not a part of the record, but no doubt the content of the verdict was discussed at that time. Thereafter, the court went back on the record and indicated that it was not clear to the court as to whether the damages found were general or special damages. The jury foreman explained that the award was for special damages. Thereupon, the court further instructed the jury that if they found special damages, they also had to find general damages, even though they (general damages) might be nominal. Neither counsel asked to see the verdict. The jury was then sent out to further consider their verdict.

The jury later returned with a new verdict which read as follows:

| General Damages | $ −0− 204.00 |
|---|---|
| Special Damages | $20.00 annually for 47 years Total $940.00 |
| TOTAL | $ 1144.00 |

The clerk read the verdict and the jury was polled. The jury was then excused.[1] Thereupon, the following colloquy occurred between the court and counsel:

THE COURT: Well, it's a total of $1,144. They have the total on special damages as $940, and $204 as special [sic] damages. But the reason I couldn't figure it out is they've got this twenty percent [sic] annually for 47 years. You can look at it. It probably should have been included in general damages rather than in specials. But they did total it up right.

[Plaintiff's Counsel]: Well, your Honor, obviously they have not either followed the instructions or don't understand them.

THE COURT: What they did, they had the total on there before. You see, it totals up. But, they didn't have the $204 in the general. Put in the general. The rest of it was as it is now. And it just didn't total. But I thought that they had—that they were describing general, which is what it was.

The Jury verdict will stand. Anything else to come before the Court?

[Defendant's counsel]: I have nothing, your Honor.

[Plaintiff's counsel]: Your Honor, we do consider that a wild verdict. We do ask for a new trial on that basis.

THE COURT: You take whatever remedy you see fit. But we're not going to cover that today.

Judgment on the verdict was entered on January 16, 1980. On January 25, 1980, plaintiff moved for a new trial, which motion was denied. Plaintiff now appeals from the judgment on the verdict and from the order denying a new trial.

■ Plaintiff alleges error in the trial court's refusal to direct a verdict on the issue of liability. Given the decision reached by the jury, the court's refusal to

---

1. Neither party requested to see the verdict before the jury was excused.

direct a verdict is moot.[2] As stated in *Phillips v. Smith* :[3]

... [A]ssuming the trial court erred in denying the motions we fail to see how plaintiffs were harmed.... The jury found for plaintiffs on liability. They assert that an unnecessary battle by the jury on the question of liability led it to compromise on the award. This is pure speculation.

Likewise in the instant case, the liability issue having been decided in favor of plaintiff, error (if any) in refusing to direct a verdict in favor of plaintiff is rendered harmless.[4]

▮ Plaintiff also challenges the jury verdict and alleges that it is legally insufficient, not supported by the evidence and shows jury confusion or misconduct.

Defendants concede that the first verdict returned to the court may have been insufficient. Pursuant to further instructions from the court, however, the jury corrected the insufficiency to include both general and special damages. Nevertheless, plaintiff contends that the $940 was improperly designated "special damages" and that when properly included as "general damages," there were actually no "special damages" awarded. The jury's failure to find any special damages, claims plaintiff, was clearly erroneous in light of the evidence presented at trial.

Defendants agree that in light of the explanation "$20.00 annually for 47 years," the $940 should have been designated "general damages." Defendants suggest, however, that the "error in form" pertains also to the $204 award which was really special damages and that such an award is not insufficient. Plaintiff presented evidence showing that as a result of her accident, she had spent in excess of $300 as medical expenses and had loss of wages of $1,200.[5] Although this evidence was not directly contradicted by defendants, in light of the foregoing facts adduced at trial it was not incumbent upon the jury to believe that all of the claimed damages were a direct result of the 1972 accident. As stated in *Schneider v. Suhrmann* :[6]

Cases dealing with the review of damages found by a jury, with invariable consistency, recite the reluctance of courts to interfere with such verdicts if there is any reasonable basis in the evidence upon which they can be maintained. [Citation omitted.]

▮ Plaintiff also challenges the propriety of the verdict as being an improper "juggling of the figures" so as to be acceptable to the court. The implication is that the *total* damage figure in the second and final verdict was the same as in the first (unacceptable) verdict, the only difference being the apportionment between general and special damages. Plaintiff alleges that "[t]he jury obviously did nothing to reconsider the element of general damages in light of the court's instruction but merely attempted to maintain the agreed-upon total."

The fact (if it be fact) that the totals of the two verdicts were the same does not necessarily invalidate the award. The reasoning in the case of *Moore v. Drennan*[7] is particularly apropos. In that case, the Oregon Supreme Court held that the trial court did not err in denying plaintiff's motion for mistrial after the jury returned a second verdict apportioning the sum of the first verdict between general and special damages. The reasoning was that the jury could rationally disbelieve the plaintiff and

---

**2.** See *Duran v. Morris*, Utah, 635 P.2d 43 (1981).

**3.** 87 N.M. 19, 528 P.2d 663 (1974). See also, *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974), and *Cowan v. Jensen*, 79 Wash.2d 844, 490 P.2d 436 (1971).

**4.** Rule 61, U.R.C.P.

**5.** As a separate point on appeal, plaintiff alleges that the jury award was inadequate inasmuch as the evidence of her damages was undisputed at trial.

**6.** 8 Utah 2d 35, 327 P.2d 822 (1958); see also, *Jorgensen v. Gonzales*, 14 Utah 2d 330, 383 P.2d 934 (1963).

**7.** 269 Or. 189, 523 P.2d 1250 (1974).

her medical witnesses and assess such damages as it found reasonable. This was so in view of the fact that the permanent, severe injuries of which the plaintiff complained might well have stemmed from other causes.[8] Likewise, in the instant case, the jury reasonably could conclude that part of plaintiff's problems were due to the unrelated congenital condition.

Notwithstanding all of the foregoing, the record is clear that at no time prior to the release of the jury, did either counsel object to the verdict or even request to see it. Plaintiff specifically contends on appeal that the court failed to give counsel an opportunity to examine the verdict before it was resubmitted to the jury and before the jury was dismissed. Plaintiff acknowledges that unless timely objected to at trial, any irregularity appearing on the face of a jury verdict is waived.[9] Plaintiff asserts, however, that the trial court has the burden of providing counsel with an opportunity to examine the verdict, and that by failing to provide the verdict to counsel the court has denied counsel the opportunity to object.[10] Such is not the law. Clearly, counsel has the obligation not only to object to the form of the verdict, but to affirmatively seek to examine it. As stated in *Johnson v. Simons* : [11]

> Counsel owe a continuing duty to the court to make timely objections ... so that the court may correct any error which requires correction during the course of the proceedings.

On the facts of this case, by failing to request court permission to examine the verdict, plaintiff has waived any objection to the form of the verdict.

Affirmed. Costs to defendants.

OAKS, J., and J. ALLAN CROCKETT, Retired Justice, concur.

HOWE, Justice (dissenting).

I dissent. I have no quarrel with the rule cited in the majority opinion that an irregularity appearing on the face of a jury verdict, is waived unless timely objection is made thereto by counsel at the trial. However, that rule has always been applied by this Court in cases where the irregularity of the verdict was apparent as it was read by the clerk of the court. In both of the cases cited for this rule in the majority opinion, *Langton v. International Transport, Inc.*, 26 Utah 2d 452, 491 P.2d 1211 (1971), and *Cohn v. J.C. Penney Company, Inc.*, Utah, 537 P.2d 306 (1975), the jury assessed special damages but no general damages; the irregularity was thus evident. In the instant case, the irregularity was not patent because the clerk read only the amounts of damages found by the jury but did not read their explanation or comment on the verdict form. It is this explanation or comment which indicates confusion in the mind of the jury. Since it was not read, plaintiff's counsel had no way of knowing until after the jury had been discharged that the jury was apparently confused in preparing their verdict.

Since there was nothing about the verdict as read which should have alerted counsel that it contained an irregularity, it is unreasonable and unfair to place the responsibility upon the plaintiff's counsel and hold, as does the majority opinion, that he waived any objection to the form of the verdict. Under our procedure, verdicts when returned are seen only by the clerk and by the judge. Counsel should not be held to. the requirement of requesting to examine the verdict unless there is something about it which arouses suspicion. Had the clerk read the explanation or comment of the

---

8. See also, *Locatelli v. Ramsey*, 223 Or. 238, 354 P.2d 317 (1960), which distinguishes the case relied upon by plaintiff, viz., *Hall v. Cornett*, 193 Or. 634, 240 P.2d 231 (1952).

9. *Langton v. International Transport, Inc.*, 26 Utah 2d 452, 491 P.2d 1211 (1971); *Cohn v. J.C. Penney Company, Inc.*, Utah, 537 P.2d 306 (1975).

10. Rule 46, U.R.C.P. provides that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

11. Utah, 551 P.2d 515 (1976).

jury, it would have been readily apparent to plaintiff's counsel that the jury had confused special and general damages, and that it was attempting to award the plaintiff as special damages $20 per year for the next 47 years (her life expectancy) although she had not prayed for nor adduced evidence of such damages.

I would grant the plaintiff a new trial.

STEWART, J., concurs in the dissenting opinion of HOWE, J.

MAUGHAN, J., did not participate herein; CROCKETT, Retired Justice, sat.